NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2017-0557

PETITION OF SECOND CHANCE BAIL BONDS
(State of New Hampshire v. James Castine)

Argued: September 27, 2018
Opinion Issued: February 13, 2019

Prieto Law, of Manchester (Joseph Prieto on the brief), and Cohen & Winters Law Office, of Concord (Andrew S. Winters orally), for the petitioner.

Gordon J. MacDonald, attorney general (Stephen D. Fuller, senior assistant attorney general, on the memorandum of law and orally), for the State.

James Castine, defendant, filed no brief.

BASSETT, J. The petitioner, corporate surety Second Chance Bail Bonds, appeals an order from the Superior Court (Delker, J.) requiring that a $10,000 bond the petitioner posted for the defendant, James Castine, be forfeited after the defendant violated several bail conditions. On appeal, the petitioner argues that the trial court erred because it can order forfeiture of a bond only if a defendant fails to appear for a court date, and not for violation of other bail conditions. Alternatively, the petitioner argues that the trial court erred by ordering forfeiture of the entire $10,000 bond. We affirm.

The record reflects the following facts. The defendant was charged with three counts of sale of heroin. The trial court set bail in the amount of $10,000 cash or corporate surety. Among other conditions, the court required that the defendant live in Epping, notify the court of any change of address, and refrain from the use of controlled drugs. On April 6, 2017, the petitioner posted a $10,000 bond, and the defendant was released from jail.

Less than two weeks later, the police found the defendant and his girlfriend passed out in a vehicle in Sturbridge, Massachusetts. After first responders administered several doses of Narcan, both individuals revived. A search of the vehicle revealed drugs and drug paraphernalia. The police also observed suitcases and other belongings in the defendant's vehicle and the defendant told the police that he and his girlfriend were moving from New Hampshire to the Carolinas.

The trial court issued an arrest warrant because the defendant violated his bail conditions. The warrant required that the bond be forfeited; however, the trial court gave the petitioner 45 days to show cause why the bond should not be forfeited. The defendant was arrested and appeared before the court on April 24, 2017. The court revoked the defendant's bail.

At the show cause hearing in June 2017, the petitioner argued that the court should not have declared the bond forfeited because the petitioner had only agreed to an "appearance bond" and the defendant had not missed any court dates. It asserted that a surety should not be required to monitor compliance with bail conditions other than appearance, and that a surety had no means to supervise the defendant's drug use or other conduct. The court concluded that a surety can be held responsible for a defendant's failure to comply with conditions of bail other than appearance in court, observed that the petitioner "took no steps whatsoever to supervise the defendant's compliance with bail conditions," and ordered the bond forfeited. The petitioner filed a motion to reconsider, arguing that even if forfeiture of the bond is appropriate, the order to forfeit the full amount of the bond is excessive. The trial court denied the petitioner's motion and this appeal followed.

As an initial matter, we address the jurisdictional basis for our review. The petitioner filed this action as a mandatory appeal under Supreme Court Rule 7. See Sup. Ct. R. 7(1)(A). The State argues that "a mandatory appeal under Supreme Court Rule 7 is not the proper vehicle to bring the surety's claim" because a "surety does not have the authority — by statute or otherwise — to bring an appeal of the lower court's forfeiture order." Accordingly, the State asserts that this direct appeal must be dismissed. The State contends that the petitioner would need to bring a civil proceeding, as described in State v. Kinne, 39 N.H. 129 (1859), in order to challenge the bail forfeiture order.

2

We note that this court has, on occasion, accepted direct appeals brought by sureties within the context of the underlying criminal claim. See State v. McGurk, 163 N.H. 584, 586 (2012); State v. Moccia, 120 N.H. 298, 300 (1980). The State asserts that these cases are not dispositive because the court did not directly address the threshold jurisdictional question of whether "the surety may take a direct appeal in the criminal case from a forfeiture order" in either case. On this point, we agree with the State; however, we are not persuaded that dismissal is appropriate under the circumstances.

Resolution of this threshold jurisdictional issue requires that we engage in statutory interpretation. When construing statutes, we first look to the plain and ordinary meaning of the words used. Appeal of Rowan, 142 N.H. 67, 71 (1997). We discern legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Petition of Carrier, 165 N.H. 719, 721 (2013). We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id.

RSA 597:6-e, III states that only "[t]he person, or the state . . . may appeal to the supreme court from a court's release or detention order, or from a decision denying revocation or amendment of such an order. The appeal shall be determined promptly." RSA 597:6-e, III (2001) (emphasis added). Although the statute does not define "the person," the chapter when read as a whole, demonstrates that "the person" is the arrestee or person subject to the bail order. See RSA 597:1 (2001) (stating "all persons arrested for an offense shall be eligible to be released pending judicial proceedings upon compliance with the provisions of this chapter" (emphasis added)). The petitioner is not "the person, or the state"; accordingly, we conclude that the statute does not give the surety the right to file a direct appeal in the underlying criminal case.

The State asserts that the sole means available to a surety to challenge a trial court's bail forfeiture order is to bring a civil proceeding called scire facias. See Kinne, 39 N.H. at 137. In Kinne, we held:

> Upon the forfeiture of a recognizance, the practice in this State is, if the recognizance is not paid or settled to the satisfaction of the prosecuting officers, to bring scire facias against the recognizors, by which they are summoned to show cause why execution should not issue against them for the amount forfeited . . . . It is a civil proceeding . . . .

3

Id. (emphasis added).  Black's Law Dictionary defines "scire facias" as "[a] writ requiring the person against whom it is issued to appear and show cause why some matter of record should not be enforced . . . ."  Black's Law Dictionary 1547 (10th ed. 2014).  Kinne, however, is distinguishable.

The present case has a much different procedural posture than Kinne.  In Kinne, the State asked this court to resolve in the first instance whether judgment should issue against the surety.  Id. at 129-31.  Here, the trial court ordered forfeiture after a show cause hearing and the petitioner appeals, challenging the trial court's authority to order that forfeiture.  Additionally, the statutory and regulatory schemes have evolved considerably in 150 years and corporate sureties face severe consequences for failing to pay a judgment on a forfeited recognizance.  See, e.g., RSA 598-A:2 (2001) (allowing the State to revoke the approval and registration that allows a surety to operate as a professional bondsman if a surety fails to satisfy a judgment in full within 30 days).  Therefore, it would be manifestly unjust if a surety did not have a readily available mechanism to secure appellate review of such a judgment.

However, neither the parties, nor we, have identified any statutory provision that authorizes a surety to appeal the trial court's decision.  But that cannot be the end of our analysis.  We have considered appeals mistakenly filed under Rule 7 or Rule 10 as petitions for a writ of certiorari under Supreme Court Rule 11.  See Petition of Guardarramos-Cepeda, 154 N.H. 7, 8-9 (2006) (considering a discretionary appeal wrongfully brought under Rule 7 as a Rule 11 petition for a writ of certiorari); Petition of Hoyt, 143 N.H. 533, 534 (1999) (accepting an appeal of an administrative decision mistakenly filed under Rule 10 as a petition for a writ of certiorari because "[i]t is well-established that our practice permits consideration of their petition as one for writ of certiorari" (quotation omitted)); Appeal of Tamm, 124 N.H. 107, 110 (1983).  "Review on certiorari is an extraordinary remedy, usually available only in the absence of a right to appeal, and only at the discretion of the court . . . ."  Petition of State of N.H. (State v. Campbell), 152 N.H. 515, 517 (2005).  Here, consistent with our past practice, we will consider the appeal filed by the petitioner under Rule 7 as a petition for a writ of certiorari.  In so concluding, we are in agreement with the Utah Supreme Court: "[a] surety cannot bring a direct appeal in a criminal case because it is not a party to the criminal case," and "the proper remedy for a non-party surety who seeks to appeal a bail bond forfeiture order is an extraordinary writ."  State v. Sun Sur. Ins. Co., 99 P.3d 818, 820 & n.1 (Utah 2004).

We now turn to the merits of the petitioner's appeal.  The petitioner first argues that the trial court erred when it concluded that the petitioner had agreed to monitor the defendant's compliance with all of the conditions of his release.  Despite the fact that the petitioner agreed to a bond form that lists all of the bail conditions imposed by the trial court, it asserts that because "it has generally been the practice in New Hampshire courts that the surety is

4

responsible for the Defendant's appearance," its obligation in this case was "solely to monitor the Defendant's compliance with respect to his appearance at all court dates." In addition, the petitioner asserts that the trial court erred because RSA 597:31 (2001) does not give the court authority to order forfeiture if a defendant violates a non-appearance condition but never misses a court appearance. The petitioner further contends that the trial court erred because "the decision to forfeit the entire $10,000 bond bears no reasonable relation to the cost and inconvenience to the State." We disagree.

We have not articulated the applicable standard for appellate review for trial court decisions regarding bail and recognizances. Our standard must reflect the fact that the applicable statutory scheme vests the trial court with broad discretion. The trial court has the discretion to decide whether a defendant is released on personal recognizance, released with conditions the judge "determines," or is detained. RSA 597:2, I, III (Supp. 2017) (amended 2018). The trial court also "may strike off a default upon a recognizance," RSA 597:32 (2001) (emphasis added), and "may render judgment for the whole amount of any forfeited recognizance . . . or for such part thereof as . . . the court may think proper." RSA 597:33 (2001) (emphases added); see Appeal of Rowan, 142 N.H. at 71 (stating that the word "may" is permissive and indicates discretion). Given that the legislature has chosen to vest the trial court with substantial discretion in this arena, we conclude that a deferential standard of review is appropriate. Accordingly, we will review trial court decisions regarding bail bond forfeiture using our unsustainable exercise of discretion standard.

We note that appellate courts in other jurisdictions utilize a similarly deferential standard of review in bond forfeiture cases. See, e.g., United States v. Parr, 594 F.2d 440, 443-44 (5th Cir. 1979) (stating, in the context of the standard of review in bond forfeiture cases, "[i]t is clear that we cannot substitute our discretion for that of the district court"); State v. Nelson, 384 P.3d 923, 935 (Haw. Ct. App. 2016) (reviewing bail bond forfeiture for "abuse of discretion"); Sur. Midland Ins. Co. v. State, 625 P.2d 90, 90 (Nev. 1981) (reviewing bail bond forfeiture for "abuse of discretion").

In determining whether a trial court ruling is an unsustainable exercise of discretion, we consider "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." State v. Lambert, 147 N.H. 295, 296 (2001). To show that the trial court's decision is not sustainable, a party "must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of [that party's] case." Id. (quotation omitted).

We first address the petitioner's argument that the trial court erred when it concluded that the surety had agreed to monitor the defendant's compliance

with <u>all</u> conditions of bail.  The petitioner acknowledges that it agreed to a bond form which sets forth the following bail conditions:

1. The defendant shall appear in this court to answer to this charge . . . .
2. The defendant shall appear in any New Hampshire Court to answer this charge when notified to report to the court.
3. The defendant immediately shall notify any New Hampshire Court in which this case is pending of any change of address.
4. The defendant shall keep the peace and be of good behavior.

The bond form also provides that "[i]f the defendant does not comply with any condition(s) Cash Bail shall be forfeited to the State and execution may issue against the defendant for Personal Recognizance and against the corporate surety or surety."  (Emphasis omitted.)  The trial court found that "the express terms of the bond made it clear that breach of 'any condition(s)' could result in proceedings against the corporate surety for forfeiture of the bond."

Notably, there is no evidence in the record to support the petitioner's representations regarding the "general practice" in the trial court regarding bail bonds and forfeiture.  However, even if we were to accept the accuracy of the petitioner's representation, a court "practice" would not operate to nullify the petitioner's agreement in this case, nor constrain the trial court's discretion to order bail forfeiture.  We hold, therefore, that the trial court did not err in concluding "that Second Chance Bail Bond assumed responsibility to monitor the defendant's bail conditions and not just to secure his appearance in court."

The petitioner next argues that because RSA 597:31, the "Declaration of Forfeiture" statute, does not empower trial courts to declare the forfeiture of a bond when the defendant violates non-appearance bail conditions, the trial court erred when it ordered forfeiture.  We disagree.

RSA 597:31 provides that "[i]f any party recognized to appear makes default, the recognizance shall be declared forfeited, and the state may cause proceedings to be had immediately for the recovery of such forfeiture."  RSA 597:31.  The statute does not define default, nor does it state that the defendant's failure to appear in court is the sole circumstance that can trigger a default.  The term "default" is commonly understood to mean "[t]he omission or failure to perform a legal or contractual duty" and "[t]o fail to appear or answer."  <u>Black's Law Dictionary</u>, <u>supra</u> at 507.  Here, the defendant failed to perform his legal or contractual duty to abide by <u>all</u> of his bond conditions; accordingly, we conclude that the defendant defaulted for purposes of RSA 597:31.  This interpretation advances the overall purpose of RSA chapter 597, which explicitly authorizes the court to issue bail orders that include "any . . . condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of the person or of any other person or the

6

community." RSA 597:2, III(b)(3). Indeed, in a different era, under a different statutory scheme, we held that a court can declare a bond forfeited for breach of a bail condition unrelated to appearance. See State v. Wheeler, 67 N.H. 511 (1894) (holding that a defendant defaulted on his bond when he pleaded guilty to "illegally keeping for sale 10 gallons of spirituous liquor" and his bail condition required him to be "of good behavior" and refrain from violating a statute that prohibited "the sale and keeping for sale of intoxicating liquor").

The majority of courts that have addressed this issue have also concluded that bonds may be forfeited for breach of bail conditions other than failure to appear. See United States v. Gigante, 85 F.3d 83, 85 (2d Cir. 1996) ("[A] bail bond and its collateral may be forfeited not only for the defendant's failure to appear, but also for other violations of bond conditions, including the defendant's commission of a crime."); United States v. Terrell, 983 F.2d 653, 654 (5th Cir. 1993) (holding that forfeiture was appropriate when the defendant violated a "travel restriction" condition and a "promise not to possess marijuana and drug paraphernalia"); State v. Williams, 730 A.2d 677, 680 (Me. 1999) (observing that forfeiture of bail after finding defendant possessed alcohol in violation of condition of release was appropriate); State v. Hernandez, 511 N.W.2d 535, 538-39 (Neb. Ct. App. 1993) (holding bond properly forfeited because defendant breached "crime-free" condition). Although a number of courts have reached a different conclusion, see, e.g., In re E.H., 397 N.E.2d 571, 573 (Ill. App. Ct. 1979); State v. Cardinal, 520 A.2d 984, 987 (Vt. 1986), we are persuaded that the majority rule is more sound.

When a surety obligates itself to guarantee the presence of a defendant at a criminal proceeding, it does so for economic gain: the premium paid for the bond. See State v. Korecky, 777 A.2d 927, 934 (N.J. 2001). A surety has the same motivation and essential obligations — supervising the defendant and preventing breach of the condition — when it agrees to conditions other than appearance. See id. Accordingly, finding no sound reason to distinguish between forfeiture of a surety bond for breach of an appearance condition and breach of a condition other than failure to appear, we conclude that the trial court did not err when it ordered forfeiture in this case.

The petitioner next argues that the trial court erred when it ordered forfeiture of the entire $10,000 bond. The petitioner contends that, under the circumstances present in this case, complete forfeiture is excessive and bears no reasonable relation to the cost or inconvenience incurred by the State. We are not persuaded.

We review the trial court's decision to order forfeiture of the entire bond under our unsustainable exercise of discretion standard. See Lambert, 147 N.H. at 296. RSA 597:33 vests the court with broad discretion when determining the amount of forfeiture: "The superior court may render judgment for the whole amount of any forfeited recognizance and interest and costs, or

7

for such part thereof as, after hearing counsel, the court may think proper, according to any special circumstances in evidence affecting the case or the party liable." RSA 597:33 (emphases added). Here, the trial court employed the analytical framework outlined by the New Jersey Supreme Court in Korecky. In Korecky, the court stated that "[i]n cases involving a condition other than appearance," trial courts should consider a non-exclusive list of factors:

> (1) whether the applicant is a commercial bondsman; (2) the extent of the bondsman's supervision of the defendant; (3) whether the defendant's breach of the recognizance of bail conditions was willful; (4) any explanation or mitigating factors presented by the defendant; (5) the deterrence value of forfeiture; (6) the seriousness of the condition violated; (7) whether forfeiture will vindicate the "injury to public interest" suffered as a result of the breach; (8) the appropriateness of the amount of the recognizance of bail; and (9) the cost, inconvenience, prejudice or potential prejudice suffered by the State as a result of the breach.

Korecky, 777 A.2d at 934-35 (citations omitted).

The trial court in this case addressed all of the Korecky factors, observing that the petitioner had "failed to fulfill its role as surety" because it "did nothing to supervise the defendant." In a subsequent order explaining why complete forfeiture was appropriate, the trial court noted that other corporate bail bond companies supervise defendants through electronic GPS monitoring for high risk defendants, and telephonic check-ins for lower risk defendants. The court found that the petitioner "could have imposed conditions . . . such as attending drug treatment or submitting to random drug screens, or submitting to home visits," but that it "made no effort to supervise [the] defendant to ensure that he would comply with the [bail] provision." (Quotation omitted.) The trial court reasoned that, given the petitioner's "total and utter lack of effort," it was not inequitable to order forfeiture of the entire bond. The trial court went on to observe that a surety is "engaged in an entrepreneurial venture, the object of which is profit. . . . [T]he return it seeks for assumption of risk is substantial, and its fees are commensurate with the risk, and that occasional losses therefore must be expected." (Quotation and brackets omitted.)

The trial court also found that the "other factors outlined in Korecky also weigh in favor of forfeiture." It reasoned that the defendant's bail violations "were serious and implicate all three bail considerations: availability of the defendant to answer the charges, danger to himself, and danger to others." The court also noted that "the issue in this case, is protection of both the defendant and the public," and that "forfeiture may entice the defendant or surety to seek treatment for the [defendant's] addiction." The court

8

acknowledged that "the State did not suffer much, if any, 'cost, inconvenience, prejudice or potential prejudice . . . as a result of the breach,'" (quoting Korecky, 777 A.2d at 935). It concluded, however, that "this factor is not determinative," and "does not weigh in favor of [the petitioner]" because, given that the defendant had been arrested and was in custody at the time of his appearance, he did not appear "voluntarily" before the court. Having reviewed the record and the trial court orders, we conclude that the petitioner has not demonstrated that the trial court's decision to order complete forfeiture was an unsustainable exercise of discretion.

Finally, the petitioner argues that, even if a trial court may order forfeiture of a bond for violation of bail conditions other than failure to appear, the trial court failed to adequately consider the impact that its order would have on the cost of surety bonds and the "'ability of defendants, particularly defendants without significant financial resources, to obtain bonds.'" (Quoting Korecky, 777 A.2d at 939.) The petitioner argues:

> If bail bondsmen were required to supervise defendants as stringently as the Court would require them to under its order, it is unlikely they would be able to stay in business. It is entirely possible that countless defendants would be instantly surrendered to the Court and subsequently sent to jail. With many defendants, it is simply too risky a gamble for bail bondsmen to be confident said defendants will comply with non-appearance conditions. While bail bondsmen have specific powers to help ensure compliance, those powers are not unfettered and it is not cost-effective to have to constantly monitor each and every defendant.

The trial court was mindful of the impact that its ruling could have on corporate sureties in New Hampshire. It noted that a surety need not "impose intense supervision on every defendant in order to avoid the risk of forfeiture," reasoning that a surety could meet its obligation to supervise by "evaluat[ing] a defendant and mak[ing] an informed judgment that the defendant presents a low risk of violating bail conditions." The trial court went on to observe that, under those circumstances, a "surety's judgment that less rigorous supervision is needed could establish a bona fide effort to police the bail conditions."

We too are mindful that a trial court's decision to order forfeiture when a defendant violates conditions other than failure to appear may have practical implications for both defendants and corporate sureties. However, our responsibility is to interpret the law as it is written. See Carrier, 165 N.H. at 721. Therefore, to the extent that the petitioner argues that, as a matter of public policy, courts should not be able to order forfeiture for breach of a condition other than failure to appear, it makes its argument in the wrong forum. See Petition of Kilton, 156 N.H. 632, 645 (2007). Matters of public

policy are reserved for the legislature, and we therefore leave to the legislature the task of addressing the petitioner's concerns.  See id.

Other issues that the petitioner raised in the notice of appeal, but did not brief, are deemed waived.  See Halifax-American Energy Co. v. Provider Power, LLC, 170 N.H. 569, 575 (2018).

Affirmed.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

10