NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2018-0637

THE STATE OF NEW HAMPSHIRE

v.

CHRISTINA A. HILL

Argued: October 16, 2019
Opinion Issued: December 13, 2019

Gordon J. MacDonald, attorney general (Lisa L. Wolford, senior assistant attorney general, on the brief and orally), for the State.

David M. Rothstein, deputy director public defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Christina A. Hill, appeals an order of the Superior Court (Ruoff, J.) releasing her before trial on the condition that she pay $10,000 cash bail, among other conditions. Although, since filing her appeal, the defendant has resolved the charges against her by plea, the parties agree that her appeal is not moot "because it presents legal issues that are of pressing public interest and are capable of repetition yet evading review." Olson v. Town of Grafton, 168 N.H. 563, 566 (2016) (quotation omitted). They have asked that we decide "the primary issue raised in her bail appeal — whether under RSA 597:2, a trial court may set bail at an amount the defendant cannot meet, on the sole basis that the defendant is a flight risk."

We agree that this issue is not moot, and now hold that RSA 597:2 (Supp. 2018) (amended 2019) permits a trial court to set unaffordable bail "on the sole basis that the defendant is a flight risk."

The defendant was charged with, and pleaded not guilty to, three drug-related charges: possession of heroin, possession of crack cocaine, and sale of crack cocaine. At her arraignment, the State requested that the court preventively detain the defendant because her release posed a danger to the community. According to the State, the defendant engaged in the charged conduct while released on her own recognizance on another drug possession charge. The State contended that, by possessing and selling controlled drugs and engaging in other conduct, the defendant violated the terms of her release. In addition, the State informed the court that the defendant engaged in the conduct while under the terms of a suspended sentence. According to the State, in August 2018, the defendant had been convicted of felony possession of a controlled drug for which she was sentenced to one-to-two years in prison, suspended for three years.

The State described, in detail, the defendant's "significant criminal record," dating from 2007, which included prior convictions for felony theft, forgery, endangering the welfare of a child, receipt of stolen property, and felony possession of a controlled drug. The State also observed that the defendant had shown through prior conduct that "she's not likely to abide by [the court's] bail conditions," noting that she had been convicted of violating the terms of her probation on multiple occasions over a ten-year period (from 2008 to 2018). In 2011, the defendant was convicted of "bail jumping." In addition, the State informed the court that the defendant had "two failures to appear on her record, one in October of 2007 . . . and . . . another in December of 2010."

Defense counsel requested that the defendant be released with nonmonetary conditions because there was not "clear and convincing evidence" that such conditions would fail to assure her appearance at trial. Defense counsel suggested that such conditions include that the defendant enroll in an intensive outpatient program for drug addiction and have "daily check-ins with the Court."

The trial court originally set cash bail at $25,000, because it was "not satisfied that any . . . conditions that [it] could set" would assure the defendant's compliance with the law. The court explained that "driving [its] decision" were the facts that the defendant committed the charged offenses while "out on bail" and under a deferred sentence.

The court specifically determined that the defendant's release would not be dangerous because she had not been charged with "selling large volumes of drugs," selling drugs in a school zone, or selling while "armed and dangerous."

2

Rather, the court stated that its bail decision was based upon its determination that the defendant posed "just a risk of flight."

Defense counsel objected, arguing that under RSA 597:2 as amended in 2018, "the Court is required to set an amount of cash bail that will not result in detention simply because the defendant is not able to post the amount of money." Defense counsel represented that the defendant lacked the ability to post $25,000 cash bail, but that her uncle could post $300. Thus, defense counsel requested that the court set cash bail at $300.

The trial court disagreed, ruling that RSA 597:2 "allows [the court] to set an amount [of cash bail] regardless of [the defendant's] ability to post it if [the court] make[s] sufficient findings by [a] preponderance of the evidence that just a bail that she can . . . post is not sufficient." The court reiterated, however, that there was not clear and convincing evidence that the defendant's release would be dangerous.

Defense counsel argued that an amount less than $25,000 cash bail would suffice to assure the defendant's appearance, explaining that the defendant "is not a person of great means" and that $25,000 cash "is not just a substantial amount of money to her, it's a fortune." The trial court reduced the cash bail to $10,000, but stated that the reduction likely would not "make that much of a difference" because that amount is not "something that [the defendant] can post." This appeal followed.

On appeal, the defendant contends that RSA 597:2 precludes the trial court from setting cash bail in an amount that the court knows will result in a defendant's detention unless the court determines by clear and convincing evidence that the defendant's release will endanger the safety of the defendant or the public. The State counters that, under RSA 597:2, a trial court may set unaffordable cash bail that results in detention when the preponderance of evidence establishes that the defendant poses a flight risk. For the reasons that follow, we agree with the State.

Resolving this issue requires that we engage in statutory interpretation. When construing statutes, we first look to the plain and ordinary meaning of the words used. Petition of Second Chance Bail Bonds, 171 N.H. 807, 811 (2019). We discern legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id. This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. Id. If a statute's language is plain and unambiguous, then we need not look beyond it

3

for further indication of legislative intent. <u>State v. Rosario</u>, 148 N.H. 488, 489 (2002). By contrast, if the statutory language is ambiguous or subject to more than one reasonable interpretation, we will review legislative history to aid in our analysis. <u>Id</u>.

RSA 597:2 provides, in relevant part:

III. (a) <u>The court shall order the pre-arraignment or pretrial release of the person on his or her personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court, or cash or corporate surety bail</u>, subject to the condition that the person not commit a crime during the period of his or her release, and subject to such further condition or combination of conditions that the court may require <u>unless the court determines by a preponderance of the evidence that such release will not reasonably assure the appearance of the person as required</u>. <u>A person who the court determines to be a danger to the safety of that person or the public shall be governed by the provisions of paragraph IV</u>, except that such dangerousness determination shall not be based solely on evidence of drug or alcohol addiction or homelessness.

(b) <u>In determining the amount of the unsecured appearance bond or cash or corporate surety bail under subparagraph II(a), if any, the court:</u>

(1) <u>Shall not impose a financial condition that will result in the pretrial detention of a person solely as a result of that financial condition</u>.

. . . .

(c) For purposes of the court's determination under this paragraph, evidence of homelessness or a lack of a mailing address by itself shall not constitute prima facie evidence of a lack of reasonable assurance that a person will not appear.

(d) <u>If, as a result of the court's decision, a person is detained, the court shall issue on the record findings of fact that document the basis for its decision</u>.

(e) If the court or justice determines by a preponderance of the evidence that the release described in this paragraph will not reasonably assure the appearance of the person, the court shall issue an order that includes the following conditions, subject to the limitation in subparagraph (b)(1):

4

(1) The condition that the person not commit a crime during the period of release; and

(2) Such further condition or combination of conditions that the court determines will reasonably assure the appearance of the person as required . . . [; and]

(3) Satisfy any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of the person or the public.

. . . .

IV. (a) If a person is charged with any criminal offense, an offense listed in RSA 173-B:1, I or a violation of a protective order under RSA 458:16, III, or after arraignment, with a violation of a protective order issued under RSA 173-B, the court may order preventive detention without bail, or, in the alternative, may order restrictive conditions including but not limited to electronic monitoring and supervision, only if the court determines by clear and convincing evidence that release will endanger the safety of that person or the public. The court may consider the following conduct as evidence of posing a danger, including, but not limited to:

(1) Threats of suicide.

(2) Acute depression.

(3) History of violating protective orders.

(4) Possessing or attempting to possess a deadly weapon in violation of an order.

(5) Death threats or threats of possessiveness toward another.

(6) Stalking, as defined in RSA 633:3-a.

(7) Cruelty or violence directed toward pets.

. . . .

(Emphases added.)[1]

---

[1] RSA 597:2 was amended in 2019. See Laws 2019, ch. 143. As amended, RSA 597:2, III(a) now

5

The defendant argues that two provisions in RSA 597:2 preclude the trial court from setting unaffordable bail: (1) RSA 597:2, III(b)(1), which provides that the court "shall not impose a financial condition that will result in the pretrial detention of a person solely as a result of that financial condition"; and (2) RSA 597:2, IV(a), which allows a trial court to order preventive detention without bail or to order restrictive conditions, such as electronic monitoring and supervision, "only if the court determines by clear and convincing evidence that release will endanger the safety of that person or the public." We disagree; neither provision precludes a trial court from setting unaffordable bail based upon the court's determination that the arrestee poses a flight risk.

Pursuant to its plain language, RSA 597:2, III(b)(1) precludes preventive detention of an arrestee "<u>solely</u> as a result" of the "financial condition" imposed by the court. (Emphasis added.) RSA 597:2, III(b)(1) is worded similarly to a provision in the federal bail statute, which precludes a federal trial court from "impos[ing] a financial condition that results in the pretrial detention of the [arrestee]." 18 U.S.C. § 3142(c)(2) (2012). It may appear that when a court permits a defendant to be released on bail, but the defendant is, nonetheless, detained because she is unable to pay the bail, the detention necessarily violates RSA 597:2, III(b)(1). We agree, however, with federal courts interpreting the analogous federal provision that such is not the case. <u>United</u>

---

provides that "evidence of substance misuse or homelessness may be considered by the court," when determining dangerousness, "but such evidence shall not be the sole basis of a dangerousness determination." Laws 2019, 143:1. Similarly, as amended in 2019, RSA 597:2, IV(a) now provides that, when assessing whether release will endanger the safety of the person or public, the court may consider "all relevant factors." Laws 2019, 143:3.

As amended, RSA 597:2, III includes a new subparagraph (g), which provides:

If the court determines by a preponderance of the evidence that a person has failed to appear on any previous matter charged as a felony, class A misdemeanor, or driving or operating while impaired, or a reasonably equivalent offense in an out-of-state jurisdiction, 3 or more times within the past 5 years, there shall be a rebuttable presumption that release will not reasonably assure the appearance of the person as required.

Laws 2019, 143:2. In addition, as amended, RSA 597:2, IV now includes new subparagraphs (b) and (c), which state that "[e]vidence in support of preventive detention shall be made by offer of proof at the initial appearance before the court," but that a defendant "may request a subsequent bail hearing where live testimony is presented to the court," and that there is a "rebuttable presumption that an alleged victim of the crime shall not be required to testify at the bail hearing." Laws 2019, 143:3.

The 2019 amendments also corrected a typographical error in RSA 597:2, III(b). Laws 2019, 143:1. Previously, that paragraph had referenced "the amount of the unsecured appearance bond or cash or corporate surety bail under subparagraph <u>II(a)</u>." RSA 597:2, III(b) (emphasis added). As amended, the paragraph now refers to "the amount of the unsecured appearance bond or cash or corporate surety bail under subparagraph <u>III(a)</u>." Laws 2019, 143:1 (emphasis added).

States v. Fidler, 419 F.3d 1026, 1028 (9th Cir. 2005) (per curiam) (construing federal bail statute and citing cases).

As the Ninth Circuit Court of Appeals has reasoned, and as the First, Fifth, Seventh, and Eleventh Circuit Courts of Appeals have similarly decided, "the de facto detention of a defendant under these circumstances" does not violate the federal bail statute "if the record shows that the detention is not based solely on the defendant's inability to meet the financial condition, but rather on the [trial] court's determination that the amount of the bond is necessary to reasonably assure the defendant's attendance at trial." Id.; see United States v. Jessup, 757 F.2d 378, 388-89 (1st Cir. 1985), abrogated on other grounds by United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990); United States v. McConnell, 842 F.2d 105, 108-10 (5th Cir. 1988); United States v. Szott, 768 F.2d 159, 160 (7th Cir. 1985) (per curiam); United States v. Wong–Alvarez, 779 F.2d 583, 584-85 (11th Cir. 1985) (per curiam). Under those circumstances, the defendant is detained "not because he cannot raise the money, but because without the money, the risk of flight . . . is too great." Fidler, 419 F.3d at 1028 (quotation omitted). Thus, in Fidler, for instance, the Ninth Circuit upheld the trial court's denial of the defendant's motion to modify his bail order, ruling that the court did not violate the federal statute by granting him pretrial release upon posting a $300,000 bond, even though the bail order resulted in his detention, because his detention was not based solely upon his inability to meet the financial condition. Id. at 1027-29. Rather, it was also based, in part, upon the determination that the amount of the bond was necessary to assure his appearance at trial. Id. at 1029.[2]

The evident purpose of RSA 597:2, III(b)(1), read in the context of the entire statute, is to preclude trial courts from setting unaffordable bail when a person is neither a flight risk nor a danger to the community. See id. at 1028. When unaffordable bail is set under those circumstances, the person is detained "solely" because of the financial condition imposed. By contrast, when unaffordable bail is set because a person poses a flight risk and the bail order results in the person's detention, that person is not detained solely because of his or her financial condition, but also because he or she poses a flight risk. Accordingly, we conclude that RSA 597:2, III(b)(1) does not preclude a trial court from setting unaffordable bail when it determines that a person poses a flight risk, but is not dangerous.

Nor are we persuaded that RSA 597:2, IV(a) precludes a trial court from setting unaffordable bail based upon the court's determination that a person presents a flight risk. RSA 597:2, IV(a) governs when a trial court may order preventive detention. Under its plain meaning, RSA 597:2, IV(a) does not allow a trial court to order preventive detention unless the court "determines by clear

---

[2] We note that the federal bail statute expressly allows preventive detention for defendants who pose a flight risk. See 18 U.S.C. § 3142(e)(1) (2012).

7

and convincing evidence that release will endanger the safety of that person or the public." RSA 597:2, IV(a). However, RSA 597:2, IV(a) does <u>not</u> govern <u>de facto</u> detention, which occurs when a trial court sets unaffordable bail that results in detention. See <u>Fidler</u>, 419 F.3d at 1028. Rather, bail orders are governed by RSA 597:2, III.

Contrary to the defendant's assertions, trial courts have the implied statutory authority to order unaffordable bail pursuant to RSA 597:2, III. The statute is structured such that orders involving bail are governed by RSA 597:2, III, and orders involving preventive detention are governed by RSA 597:2, IV. RSA 597:2, III(d) expressly states that "[i]f, as a result of the court's decision, a person is detained, the court shall issue on the record findings of fact that document the basis for its decision." The plain language of RSA 597:2, III(d) implies that some bail orders <u>will</u> result in detention.

The defendant argues that "despite the placement of Paragraph (d) in Section III" of RSA 597:2, "Paragraph (d) must modify Paragraph IV" because "Paragraph IV contains no requirement that the court make a record to support its detention decision." The defendant posits that the legislature could not have "authorized detention under Paragraph IV but not required the court to make findings in support of its decision."

The defendant's argument requires that we add language to RSA 597:2 that the legislature did not see fit to include, which we may not do. <u>Petition of Second Chance Bail Bonds</u>, 171 N.H. at 811. Had the legislature intended subparagraph III(d) to apply to paragraph IV, it would have made it so. Moreover, although we need not decide the issue in this case, we observe that the Due Process Clauses of the New Hampshire and Federal Constitutions may require a trial court to make specific findings of fact before directly ordering the pretrial detention of an arrestee, regardless of whether RSA 597:2 requires those findings. See <u>United States v. Salerno</u>, 481 U.S. 739, 751-52 (1987) (holding that the "extensive safeguards" required by the federal bail statute, which include the requirement that a decision to detain an arrestee pending trial be supported by written findings of fact and a statement of reasons, "suffice to repel a facial challenge" to the statute under the Due Process Clause of the Fifth Amendment to the Federal Constitution).

RSA 597:2, III(b)(1) similarly implies that detention may occur as the result of a bail order. It provides that, when imposing a financial condition, such as bail, detention may not result "solely" as a result of that financial condition. RSA 597:2, III(a) also implies authority to set unaffordable bail. It requires the court to order an arrestee to be released

> on his or her personal recognizance, or upon execution of an
> unsecured appearance bond in an amount specified by the court,
> or cash or corporate surety bail, subject to the condition that the

person not commit a crime during the period of his or her release, and subject to such further condition or combination of conditions that the court may require <u>unless the court determines by a preponderance of the evidence that such release will not reasonably assure the appearance of the person as required</u>.

RSA 597:2, III(a) (emphasis added). RSA 597:2, III(a) does not expressly state what the court may do if it determines, by a preponderance of the evidence, that a person's release, even with conditions, will not reasonably assure his or her appearance as required, but its wording implies that, under those circumstances, the court has the authority to set unaffordable bail that results in pretrial detention.

The defendant argues that, to the contrary, when a court determines that a person's release will not reasonably assure his or her appearance, its only option is to order the person released with the conditions set forth in RSA 597:2, III(e). The defendant correctly notes that "[m]issing from the list of options in RSA 597:2, III(e) is detention," and that subparagraph III(e) "provides that the court's authority to issue bail orders is limited by RSA 597:2, III(b)(1)," which, as previously discussed, precludes the court from imposing a financial condition that will result in the person's pretrial detention based <u>solely</u> on that financial condition.

The defendant's interpretation, however, does not square with the plain meaning of the phrase "<u>unless</u> the court determines by a preponderance of the evidence that <u>such release</u> will not reasonably assure the appearance of the person as required." RSA 597:2, III(a) (emphases added); <u>see</u> RSA 597:2, III(e) (allowing the court to issue an order with certain conditions "[i]f the court . . . determines by a preponderance of the evidence that the [person's] release" without such conditions "will not reasonably assure the appearance of the person"). RSA 597:2, III(a) and (e) set forth the conditions that a court may impose to reasonably assure the appearance of the person as required, be they monetary ("cash or corporate surety bail") or nonmonetary ("that the person not commit a crime" while on release). However, both RSA 597:2, III(a) and (e) contemplate that, for some arrestees, release on conditions "will not reasonably assure" the person's appearance. Both RSA 597:2, III(a) and (e) imply that in such cases, the court may set unaffordable bail that results in detention, provided that in so doing, the person is detained not <u>solely</u> because the bail is unaffordable, but also because the person poses a flight risk.

The defendant suggests that we examine the legislative history of the 2018 amendments to RSA 597:2. We decline to do so because we interpret the statute according to its plain meaning. <u>See</u> <u>Rosario</u>, 148 N.H. at 489.

For all of the above reasons, therefore, we hold that RSA 597:2 allows a trial court to set unaffordable bail that results in detention based solely upon

9

the court's determination that an arrestee poses a flight risk. Of course, if the legislature disagrees with our statutory interpretation, it is free to amend the statute, as it sees fit, within constitutional limitations. See State v. Proctor, 171 N.H. 800, 807 (2019).

We wish to make clear that, in this opinion, we have decided only the narrow statutory question the parties have posed and briefed. Thus, we express no opinion as to any issue the parties have not briefed, such as whether the evidence before the trial court supported its factual findings in this case, whether the bail order otherwise complied with RSA 597:2, whether the bail hearing complied with RSA 597:2, or whether either the bail order or hearing complied with the State or Federal Constitutions. See, e.g., Opinion of the Justices, 117 N.H. 382, 385 (1977) (opining that pursuant to Part I, Article 33 of the New Hampshire Constitution and the Eighth Amendment of the Federal Constitution, "[t]he purpose of the imposition of bail is to assure the defendant's appearance in court, and therefore the amount of bail may be set no higher than that figure reasonably required to accomplish this result"); Stack v. Boyle, 342 U.S. 1, 4-5 (1951) (holding that bail set at an amount more than is reasonably calculated to assure that the arrestee will stand trial is excessive under the Eighth Amendment); Brangan v. Commonwealth, 80 N.E.3d 949, 963-67 (Mass. 2017) (setting forth due process standards that apply when unaffordable bail results in detention).

Affirmed.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.