**UNITED STATES, Appellant,**

**v.**

**Ilario M.A. ZANNINO,**
**Defendant, Appellee.**

**No. 86–1597.**

United States Court of Appeals,
First Circuit.

Submitted July 24, 1986.

Decided Aug. 15, 1986.

William F. Weld, U.S. Atty., Jeremiah T. O'Sullivan, Diane M. Kottmyer, James B. Farmer and Stephen P. Heymann, U.S. Dept. of Justice, on brief for appellant.

Joseph J. Balliro and Balliro, Mondano & Balliro, Charles W. Rankin, James L. Sultan and Rankin & Sultan, on brief for appellee.

Before LEVIN H. CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

PER CURIAM.

Ilario M.A. Zannino was indicted on September 19, 1983, along with six co-defendants, in a multi-count indictment charging him with a number of racketeering, loan-sharking, and gambling violations, including predicate acts of two murders and four conspiracies to commit murder. After this court held that the Bail Reform Act of 1984 could be applied to a defendant, such as Zannino, who had been released on bail under the 1966 Bail Act, *see United States v. Zannino*, 761 F.2d 52 (1st Cir.1985), the district court on May 16, 1985 revoked Zannino's bail pursuant to a finding that "no conditions of release will reasonably assure the safety of any other person and the community." On July 17, 1985, soon after trial of Zannino and his co-defendants had begun, Zannino suffered cardiac arrest and was severed from the trial, without government objection. Zannino ultimately was placed in custody in the maximum security unit of the Lemuel Shattuck Hospital, where he still remains.

Trial of Zannino's co-defendants concluded on February 26, 1986. Subsequently, the district court, in response to Zannino's July 30, 1985 Motion for Reconsideration of Detention Order (in which Zannino sought release on bail on the grounds that he was no longer "dangerous" and that his indefinite detention while physically unable to stand trial violated due process), appointed a panel of cardiologists to assist the court's determination of Zannino's ability to stand trial. After reviewing the panel's report, the district court concluded "that Zannino at the present time is, and for the foreseeable future will remain, medically unable to withstand the several months of trial that would be needed to prosecute him on all pending counts in the instant indictment." The court left open the possibility of trying Zannino on one count at a time, as the government proposed, rather than trying him on all twenty counts of the indictment together. However, on June 17, 1986, the court ordered Zannino's temporary release on bail pending the court's determination, after further consultation with the panel of cardiologists, whether Zannino could stand trial to this limited extent. The court set various conditions for Zannino's release, including the following: that Zannino not leave his residence without court approval except for medical visits; that Zannino receive no visitors without approval of Pretrial Services except counsel and his immediate family; and, with Zannino's consent, that the government monitor his telephone calls. The government appealed from the temporary release order. Upon the government's motion, this court stayed Zannino's release pending further order of this court. Given the unusual circumstances present in this case, we now reverse the temporary release order.

The district court elaborated its reasoning for its temporary release order in its July 1, 1986 Memorandum in Support of Order for Temporary Release on Bail and, following this court's request for certain further findings, its July 24, 1986 Memorandum in Response to Court of Appeals' July 18, 1986 Order. The court specifically held that Zannino remains "dangerous" for purposes of the Bail Reform Act, 18 U.S.C. § 3142, and that its bail conditions did not suffice to neutralize his dangerousness. The court nonetheless found that continued pretrial detention of Zannino beyond thirteen months (commencing May 16, 1985) would raise serious questions as to the constitutionality of the Bail Reform Act as applied. The court accordingly found that avoiding this potential due process violation constituted a "compelling reason" to justify Zannino's temporary release under 18 U.S.C. § 3142(i), which provides,

"The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."

In the alternative, the court held that if this statutory basis for release were faulty, release was mandated by the due process clause of the fifth amendment. The court made clear that Zannino's release was in fact temporary, "only until such time as a final determination is made ... whether he is medically fit to stand trial under any proposed format." If he were then deemed fit, the court explained, he could be returned to detention pending an imminent trial; if he were deemed unable to stand trial, the court would then make a further ruling as to his detention, likely finding his continued release to be constitutionally compelled. The court estimated that it would reach a decision on Zannino's fitness for trial, following receipt of a further report from the panel of cardiologists, in early- to mid-September, 1986.

Because of the district court's alternative holding that Zannino's temporary release is mandated by due process, we cannot resolve this case on non-constitutional grounds alone. Furthermore, the district court's statutory ground of decision—its invocation of the temporary release provision of 18 U.S.C. § 3142(i)—was premised wholly on the court's determination that release under § 3142(i) was necessary for the "compelling reason" of averting the serious constitutional problems it thought posed by continued detention. Therefore, our holding, *infra*, that continued detention pending an imminent medical finding will not offend due process renders it unnecessary for this court to consider whether § 3142(i) could provide a proper basis for temporary release in a case such as this. Instead, we now proceed to a consideration of the constitutional question.

As an initial matter, the parties dispute the proper standard of review to be applied to pretrial bail orders under the Bail Reform Act. The government urges that we undertake "[a]n independent review of the bail decision tempered by deference to the district court's firsthand judgment of the situation," the standard applied by this court to post-conviction bail decisions under *United States v. Bayko*, 774 F.2d 516, 520 (1st Cir.1985). *See, e.g., United States v.*

*Portes*, 786 F.2d 758, 762 (7th Cir.1986); *United States v. Hurtado*, 779 F.2d 1467, 1470–73 (11th Cir.1985); *United States v. Maull*, 773 F.2d 1479, 1487 (8th Cir.1985) (en banc); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir.1985); *United States v. Hazime*, 762 F.2d 34, 36–37 (6th Cir.1985); *United States v. Delker*, 757 F.2d 1390, 1399–1400 (3d Cir.1985). Zannino argues that the proper standard is a "clearly erroneous" or "abuse of discretion" standard. *See, e.g., United States v. Fortna*, 769 F.2d 243, 250 (5th Cir.1985); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir.1985); *United States v. Williams*, 753 F.2d 329, 333 n. 12 (4th Cir.1985). However, we are not here called upon to review a pretrial release decision made by application of the standards set out in the Bail Reform Act, 18 U.S.C. § 3142. Temporary release was ordered here in order to avert "serious questions as to the constitutionality of the 1984 Bail Reform Act as applied here," or, in the alternative, because compelled by the fifth amendment. No matter what the proper standard of review of pretrial release decisions based on statutory criteria may be, there is no question that we must make a de novo determination—with deference to the district court's underlying findings of fact—as to the instant constitutional question. Accordingly, we do not decide what standard ordinarily should govern our review of pretrial bail decisions.

Zannino argues, relying on the recent opinion of the Second Circuit in *United States v. Salerno*, 794 F.2d 64 (2d Cir. 1986), that the Bail Reform Act is facially unconstitutional in that it provides for pretrial detention solely on the ground that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e). However, we are in agreement with the dissenting opinion of Chief Judge Feinberg in *Salerno* that this aspect of the Act does not violate substantive due process. We adopt the reasoning stated in Part I of Chief Judge Feinberg's opinion. All other circuits which have con-

sidered the question have found no violation of the fifth amendment. *See United States v. Perry,* 788 F.2d 100, 112–13 (3d Cir.1986); *United States v. Portes,* 786 F.2d 758, 767 (7th Cir.1986). Zannino has not specifically suggested any other constitutional flaw on the face of the Bail Reform Act.

■ We turn, then, to Zannino's primary contention that the Act cannot constitutionally be applied to subject him to any further pretrial detention, since the resulting length of detention is substantial enough to constitute "punishment" without trial, in violation of the due process clause of the fifth amendment. We acknowledge that, as Zannino argues, other courts have found pretrial detention too prolonged to withstand due process challenge when imposed for periods of time substantially shorter than the sixteen months that Zannino will have been in custody as of mid-September, 1986. *See, e.g., United States v. Melendez-Carrion,* 790 F.2d 984, 1008 (2d Cir.1986) (Feinberg, C.J., concurring) (eight months); *United States v. Theron,* 782 F.2d 1510, 1516 (10th Cir.1986) (over four months); *United States v. LoFranco,* 620 F.Supp. 1324 (N.D.N.Y.1985) (six months), *appeal dismissed sub nom. United States v. Cheeseman,* 783 F.2d 38 (2d Cir.1986). *Cf.* 18 U.S.C. § 3164(b) (ninety-day limit of Speedy Trial Act). We need not quarrel with the above-cited decisions to observe that this case presents unusual circumstances not present in any of them: a palpably dangerous defendant, whose continued detention is the result of prolonged physical inability to stand trial, whose inability nevertheless does not prevent his continuing dangerousness, and who faces an imminent determination of his present medical fitness for trial.

The primary factors guiding the determination when due process requires a release from pretrial detention have been identified in *United States v. Accetturo,* 783 F.2d 382, 388 (3d Cir.1986):

> Because due process is a flexible concept, arbitrary lines should not be drawn regarding precisely when defendants ad-

judged to be flight risks or dangers to the community should be released pending trial. Instead, we believe that due process judgments should be made on the facts of individual cases, and should reflect the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits. Moreover, these judgments should reflect such additional factors as the length of the detention that has in fact occurred, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity.

Here, the charges against Zannino are of the gravest order, including predicate acts of murder and conspiracy to commit murder. If convicted of all offenses charged, Zannino would face a maximum sentence of imprisonment for 130 years. As far as can be discerned from the record before us, the government's case on the merits of these charges appears strong. The government's showing of Zannino's dangerousness, too, is strong. In ordering Zannino's detention in May 1985, the district court noted that Zannino played a continuing leadership role in mob activities, to which he has "devoted his life," and that Zannino fell within the rebuttable presumption of dangerousness under 18 U.S.C. § 3142(e). In its July 24, 1986 memorandum, the district court concluded, "[T]he court is of the view that Zannino's coronary problems are not so disabling—and further that no bail conditions can be realistically fashioned—so as to substantially eliminate the prospect of his continuing to engage in criminal activities." The evidence of record strongly supports the district court's conclusion in that it indicates that Zannino, even though detained in a hospital, continues to play a role in directing illegal activities through communications with associates. These factors, therefore, militate in favor of a finding that due process permits a longer period of pretrial detention here than in cases involving defendants less demonstra-

bly dangerous and charged with less serious offenses.

Even so, we shall assume that in many, perhaps most, cases, sixteen months would be found to exceed the due process limitations on the duration of pretrial confinement. What makes this case different is that here trial has been delayed because of Zannino's insistence, supported at least so far by the district court's findings from the medical evidence before it, that his cardiac condition renders him physically unfit to stand trial, and that nevertheless this condition has not rendered him non-dangerous. The record substantiates the government's contention that it has steadfastly pressed for trial throughout the period of Zannino's detention. Under these circumstances we think pretrial detention of longer duration may be imposed without running afoul of due process limitations. *United States v. Salerno, supra,* at 75 (Feinberg, C.J., dissenting) ("Though length of time may be the best measure of the impact of incarceration on a person accused of crime, perhaps due process judgments should take into account the reasons for pretrial delay in unusual circumstances."). *Cf. United States v. Theron,* 782 F.2d 1510, 1516 (10th Cir.1986) ("We think some extension [of the ninety-day limit on incarceration before trial imposed by 18 U.S.C. § 3164] is constitutionally permissible. Delays, for example, that the defendant caused would not raise a problem."). Otherwise, courts often would be forced by the duration of detention alone to release a palpably dangerous defendant, or a defendant palpably likely to flee or intimidate witnesses, where that defendant had suffered a serious physical disorder that had forced postponement of trial for more than a few weeks. Such a result would virtually scuttle the important governmental purposes promoted by the Bail Reform Act's pretrial detention provisions in cases where a defendant's physical ailments temporarily thwarted attempts by the government to bring about a speedy trial. By the happenstance of a defendant's medical difficulties, pretrial release would be necessary, despite the Act, before the government had any opportunity for trial.

Congress dealt with similar concerns in the Speedy Trial Act, which excludes from the computation of the time within which trial must commence "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant," 18 U.S.C. § 3161(h)(1)(A), and "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4). Congress recognized that where a defendant is physically unfit for trial, the time constraints normally imposed upon the criminal process need not apply with full force. Congress, of course, acted in a different context, but we think the principle it recognized in the above-quoted provisions may properly be accorded weight in the due process calculation.

We also find indirect support in the settled authority upholding against due process challenge indefinite pretrial commitment of dangerous defendants found mentally incompetent to stand trial. *See Jackson v. Indiana,* 406 U.S. 715, 731–33, 92 S.Ct. 1845, 1854–55, 32 L.Ed.2d 435 (1972); *Greenwood v. United States,* 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956). Although the district court is manifestly correct that this line of authority cannot be dispositive of issues involving pretrial detention of mentally competent defendants, such as Zannino, nevertheless these cases do indirectly buttress the proposition that the due process clause imposes less stringent time limits upon the pretrial detention of a dangerous defendant who has been physically unable to stand trial. If a dangerous defendant can constitutionally be held indefinitely because mentally unfit for trial, it is reasonable that due process will permit a dangerous defendant to be held longer than would otherwise be permissible because physically unfit for trial although fit enough to remain dangerous.

Our conclusion that the circumstances of this case would permit a longer period of detention than the norm should not be tak-

en to mean that in such cases the unusually long period of sixteen months is necessarily permissible. However, having found that the Act's purpose that society be protected from dangerous defendants applies with full force to Zannino, we cannot say that sixteen months' detention under the circumstances here "appears excessive in relation to [that] purpose," *Schall v. Martin,* 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984). We reiterate that the government has done all it could to bring Zannino to trial expeditiously.

We are also influenced by the fact that we are approving only a short, discrete, and finite additional period of detention. The district court is now in the process of submitting a series of questions to the panel of cardiologists, and has made it clear that its determination of Zannino's fitness for trial will be made next month (September 1986). Our result could be different if Zannino were now to be held on an open-ended basis pending some future determination of his fitness for trial to be made at an uncertain time. Nor do we necessarily suggest by our holding that Zannino can be detained indefinitely without trial in the event it is determined that his medical condition is chronic and deteriorating, that his dangerousness has been substantially reduced, if not eliminated, and that he cannot soon, or ever, be tried under any conditions. We merely hold that, under the unique circumstances of this case, pretrial detention will not cross the line between regulatory detention and impermissible "punishment" by the time the district court, in early fall, determines Zannino's capacity to stand trial. Following that determination, the district court will need to make a further bail decision, as it acknowledged in its July 1 memorandum. Any outcome of the district court's medical inquiry other than the setting of an immediate trial date may raise anew the difficult constitutional issue discussed herein.

The district court's order for temporary release on bail is *reversed.*