NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Cheshire
No. 2019-0028

THE STATE OF NEW HAMPSHIRE

v.

PAUL R. SPAULDING

Submitted: May 8, 2019
Opinion Issued: May 17, 2019

Gordon J. MacDonald, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the memorandum of law), for the State.

David M. Rothstein, deputy director public defender, of Concord, on the memorandum of law, for the defendant.

HICKS, J. The defendant, Paul R. Spaulding, appeals the order of the Superior Court (Ruoff, J.) that he be detained without bail pending resolution of the charges against him. See RSA 597:2, IV(a) (Supp. 2018). We affirm.

The record establishes the following facts. The defendant was charged with two counts of misdemeanor domestic violence, see RSA 631:2-b (Supp. 2018), one count of felony reckless conduct, see RSA 631:3 (Supp. 2018), and one count of felony criminal threatening, see RSA 631:4 (2016). At his arraignment on those charges, he pleaded not guilty. Based upon an affidavit that has not been provided as part of the appellate record and representations

by the State, the court found, by clear and convincing evidence, that preventive detention was warranted and ordered the defendant to be detained without bail. See RSA 597:2, IV(a). The court also issued a domestic violence criminal order of protection. See RSA ch. 173-B (2014 & Supp. 2018).

The court held a probable cause hearing on the charges a few days later. At that time, the State entered a nolle prosequi on the criminal threatening charge and filed a new charge against the defendant, criminal threatening with a deadly weapon, to which the defendant pleaded not guilty. See RSA 631:4, II(a)(2). At the probable cause hearing, the court heard testimony about the event that gave rise to the charges against the defendant. Specifically, there was testimony that at approximately 2:00 in the morning on December 16, 2018, there was a call regarding a domestic argument between the caller's mother and the defendant. The caller informed dispatch that the defendant had discharged a firearm outside.

Officers were dispatched to an apartment building in Hinsdale at which the domestic disturbance allegedly was taking place. When the officers arrived, they heard yelling from one of the apartments. The apartment door was open, and the officers issued multiple commands to the defendant to exit. Seeing a firearm on the defendant's hip, the police took him into detention immediately. The defendant was "very, very angry" and "vocal" and could be heard saying to the complainant, "[Y]ou did this to me, you did this to me." One officer described the defendant as "growling" with anger. As officers placed the defendant into the cruiser, they heard him yelling, "I'm going to kill the bitch."

After he was detained, the police recovered both the firearm on the defendant's hip and a second gun. One gun was a Kel-Tec nine-millimeter, semiautomatic pistol that was missing one round of ammunition; the other was a Smith & Wesson nine-millimeter, semiautomatic pistol that was not missing any rounds. At the jail, the police seized a magazine of ammunition from the defendant as well as a knife with a six-inch blade. Police testified that the knife was sheathed and "stuffed into the . . . inside of [the defendant's] waistband by his underwear."

Police then interviewed the complainant and her daughter. They were told that the complainant and the defendant had been in an intimate relationship for approximately one year. Although the defendant lives in Vermont "most of the time," he stayed with the complainant occasionally.

The complainant told the police that she and the defendant had gone out with other building tenants that night and that the defendant had had "a couple Jack and Cokes." When the complainant and the defendant came home, they had smoked some marijuana, and the defendant then had become "enraged," although the complainant said that she had "no idea why." When the complainant attempted to leave the apartment, the defendant prevented

2

her from doing so by grabbing her shoulders and pinning her against the wall of the bedroom so that she could not move. Eventually, he released his grip, but when she attempted to leave the apartment he stood in front of the door and would not let her leave. When she was finally able to leave, she fled to the first floor apartment of a neighbor.

While in the neighbor's apartment, the complainant heard the defendant come downstairs and leave the building only to return and begin banging on the neighbor's door. The defendant sounded rageful as he said, "[I]f you don't open the door, I'm just going to shoot it down." The complainant felt afraid and assumed a "vertical fetal position." She told police that she was afraid because she knew that the defendant had a gun and his possession of a gun had been "contentious in their relationship." The complainant also said that she felt afraid because she had never seen the defendant act like this before.

The complainant then heard the defendant ascend and descend the stairs rapidly, running outside the apartment building. Less than a minute later, the complainant heard a gunshot.

The complainant's daughter confirmed that the argument between the defendant and the complainant occurred after the two had returned to the apartment that night and that the complainant had run downstairs to the first floor neighbor's apartment. The complainant's daughter heard the defendant banging on the neighbor's door and heard him say "I'm not doing this anymore, I'm just going to shoot it down," or words to that effect. She then heard the defendant go upstairs, threaten to kill himself, run downstairs, and run outside. She heard a gunshot, and, at that point, called the police. The police interviewed a nearby neighbor who said that he heard a "pop," which he believed to be a gunshot.

Based upon the testimony at the hearing, the trial court ruled that there was probable cause with respect to the two domestic violence charges and the criminal threatening with a deadly weapon charge. The court ruled that the reckless conduct charge lacked probable cause and, therefore, dismissed it.

The State requested that the court maintain its prior preventive detention order. The trial court did so, finding "that the combination of alcohol, domest[ic] violence, threats to kill the [complainant], to shoot a door down, the discharge of a firearm, the defendant's combativeness with the police, and the fact that he was armed with a . . . knife and two loaded semi-automatic 9MM pistols[,] all warrant detention without bail." This appeal followed.

We review the trial court's decision under our unsustainable exercise of discretion standard. See Petition of Second Chance Bail Bonds, 172 N.H. ___, ___ (decided February 13, 2019) (slip op. at 5); cf. State v. Tsopas, 166 N.H. 528, 531 (2014) (concerning a trial court's decision to modify bail). In

determining whether a trial court ruling is an unsustainable exercise of discretion, we consider "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." State v. Lambert, 147 N.H. 295, 296 (2001). To show that the trial court's decision is not sustainable, a party "must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of [that party's] case." Id. (quotation omitted).

On appeal, the defendant contends that the court erred by ordering him detained without bail because there was a "lack of proof of clear and convincing evidence of danger." RSA 597:2, IV(a) vests the court with broad discretion to order a defendant to be held without bail. It provides:

> If a person is charged with any criminal offense, an offense listed in RSA 173-B:1, I or a violation of a protective order under RSA 458:16, III, or after arraignment, with a violation of a protective order issued under RSA 173-B, the court may order preventive detention without bail, or, in the alternative, may order restrictive conditions including but not limited to electronic monitoring and supervision, only if the court determines by clear and convincing evidence that release will endanger the safety of that person or the public. The court may consider the following conduct as evidence of posing a danger, including, but not limited to:
>     (1) Threats of suicide.
>
>     (2) Acute depression.
>
>     (3) History of violating protective orders.
>
>     (4) Possessing or attempting to possess a deadly weapon in violation of an order.
>
>     (5) Death threats or threats of possessiveness toward another.
>
>     (6) Stalking, as defined in RSA 633:3-a.
>
>     (7) Cruelty or violence directed toward pets.

RSA 597:2, IV(a) (emphases added); cf. Petition of Second Chance Bail Bonds, 172 N.H. at ___ (slip op. at 7-8) (concerning the bail forfeiture statute).

Here, the trial court found the requisite evidence of posing a danger in the defendant's use of alcohol, domestic violence, threats to kill the complainant, threats to shoot a door, discharge of a firearm, combativeness

4

with the police, and being armed with two, loaded, semi-automatic pistols and a knife with a six-inch blade. The record also contains evidence that the defendant threatened to commit suicide and that he acted possessively toward the complainant by refusing to allow her to leave the apartment.

To the extent that the defendant argues that the trial court erred by not considering "circumstances outside the offense," we disagree. Notably, no relevant "circumstances outside the offense" were brought to the trial court's attention at the probable cause hearing. Moreover, the statute does not require the court to consider "circumstances outside the offense" when determining whether there is clear and convincing evidence that the person's release will endanger "that person or the public." RSA 597:2, IV(a). Nor, contrary to the defendant's assertions, does the statute require the trial court to consider less restrictive alternatives to detention without bail before ordering such detention. Given the evidence before the trial court, we cannot conclude that it unsustainably exercised its discretion when it found by clear and convincing evidence that detention without bail was warranted in this case.

Affirmed.

LYNN, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.