# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0088, <u>State of New Hampshire v. Kevin Porter</u>, the court on September 2, 2021, issued the following order:**

Having considered the memoranda of law and oral arguments of the parties, we conclude that a formal written opinion is unnecessary in this case. The defendant, Kevin Porter, is charged with criminal threatening, criminal mischief, resisting arrest, possession of a controlled drug, falsifying physical evidence, and being a felon in possession of a dangerous weapon. He appeals an order of the Superior Court (<u>Temple</u>, J.) denying his request for bail, arguing that the court erred by: (1) continuing his preventive detention on the grounds that he poses a danger to himself and the public; and (2) concluding that continued pretrial detention does not violate his due process rights. We affirm.

The following relevant facts are supported by the record or are otherwise undisputed. On the morning of June 14, 2020, the defendant was arrested following an incident that occurred at a sober living facility where he had been staying. The next day, the Superior Court (<u>Colburn</u>, J.) ordered him preventively detained. The defendant requested an evidentiary bail hearing, which the Superior Court (<u>Temple</u>, J.) held on July 16, 2020. At the hearing, the court heard testimony from one of the officers who was involved in the investigation of the incident. He testified that, on the morning of the defendant's arrest, several officers were dispatched to the sober living facility in response to a report of an argument between the defendant and two female residents at the facility, H.S. and P.S. Upon their arrival, the officers asked the defendant if they could frisk him for weapons, at which point the defendant reached for his waistband. One of the officers immediately attempted to restrain the defendant, but the defendant resisted this effort and continued reaching for his waistband. The officers eventually restrained the defendant, and, after arresting him, found two small plastic bags that appeared to contain powder and crack cocaine as well as a four-inch fixed-blade knife that was strapped to his waistband. The defendant was then transported to the police station, where he ripped a sprinkler from the ceiling of his holding cell. He then produced another small plastic bag that appeared to contain drugs and put the contents in his mouth, informing the officers that he intended to overdose. The officers called emergency medical services, and the defendant was transported to the hospital.

Following the defendant's arrest, the officer who testified at the hearing interviewed H.S. and P.S. as well as the manager and an employee of the sober living facility. Both H.S. and P.S. reported that they had spent time with the defendant the evening before, but that he "started to become more and more difficult" as the night progressed, repeatedly entering their bedroom unannounced. They further reported that after they asked the defendant to stop entering their room, the defendant kicked in their door, displayed the knife that was strapped to his waistband, and threatened to either "hit" or "stab" them. H.S. also reported that she witnessed the defendant ingest cocaine earlier that evening and that she felt "in fear for her life" during the incident. According to the officer's testimony, the employee at the facility reported that, upon learning about the incident, she attempted to deescalate the situation, but decided to call the police when she "saw [that] the situation was out of control" and "that [the defendant] would not calm down."

The court also heard testimony about the defendant's criminal record, which included, among other things, escape, resisting arrest, breaking and entering, possession of a controlled substance, possession of a firearm without a permit, and multiple assault and battery convictions. In 2011, the defendant was convicted in Massachusetts of manslaughter, resulting in a period of incarceration that lasted approximately ten years. Most recently, in 2013, he was convicted in Massachusetts of vandalism and assault and battery and received another two and one-half year sentence. At the time of the incident giving rise to this case, the defendant had two outstanding arrest warrants in Massachusetts for home invasion and a parole violation.

Based upon this evidence, the State asked the court to order preventive detention, arguing that the defendant posed a risk of flight and a danger to himself and the public. The defendant countered that the evidence did not support preventive detention, arguing, among other things, that his behavior resulted from his mental health and substance use issues and that, if released, those issues could be controlled with treatment. The court ultimately concluded that preventive detention was warranted based upon the officer's testimony regarding the underlying incident as well as the defendant's criminal history, mental health issues, and substance use disorder. The court also ordered that the defendant "receive the appropriate level of medical, mental health, and substance use disorder treatment" while incarcerated.

In August 2020, the defendant requested another hearing to address bail, alleging, among other things, "unconstitutional and punitive conditions" at the house of corrections. The trial court granted the motion and held another bail hearing. At the hearing, the defendant argued that he was not receiving appropriate mental health or substance use treatment while incarcerated and that he was languishing while waiting for his trial, which had been delayed due to the COVID-19 pandemic. Accordingly, he asked to be released so that he could receive in-patient treatment at a recovery center. The

2

State countered that release was inappropriate and that the defendant could obtain additional treatment through the Substance Abuse Treatment Community for Offenders (SATCO) program. The court again denied bail, concluding that the SATCO program was more appropriate than release.

In January 2021, the defendant requested a third hearing to address bail. The defendant primarily argued that he was not receiving appropriate mental health treatment and that his prolonged detention during the COVID-19 pandemic had exacerbated his mental health conditions, in part because he was in lockdown for twenty-two hours per day in the restrictive housing unit. After holding a hearing, the court again denied bail. In its written order, the court construed the defendant's argument as asserting a claim that the excessive length of his detention violated his due process rights under the Federal Constitution. Citing decisions by the First and Second Circuit Courts of Appeals, the court analyzed the defendant's due process claim by weighing the following six factors:

> (1) the seriousness of the charge; (2) the strength of the government's proof that defendant poses a risk of flight or a danger to the community; (3) the strength of the government's case on the merits; (4) the length of the detention; (5) the complexity of the case; and (6) whether one side or the other has needlessly added to the complexity or delay.

See United States v. Zannino, 798 F.2d 544, 547 (1st Cir. 1986) (outlining all six factors); United States v. Briggs, 697 F.3d 98, 101 (2d Cir. 2012) (adopting three out of six factors). In applying these factors, the court concluded that the fourth factor — the length of the detention — weighed in the defendant's favor, but that the remaining five factors weighed against his claim. Nonetheless, despite finding no due process violation, the court noted that continued detention in the restrictive housing unit "may alter the balance of the due process analysis." This appeal followed.

On appeal, the defendant first argues that the trial court erred by continuing his preventive detention on the grounds that he poses a danger to himself and the public. RSA 597:2, III(a) (Supp. 2020) provides, in relevant part, that "the court may order preventive detention without bail . . . only if [it] determines by clear and convincing evidence that release will endanger the safety of [the defendant] or the public." It further provides that "[i]n determining whether release will endanger the safety of [the defendant] or the public, the court may consider all relevant factors presented" to the court by the parties. Id.

We review the trial court's decision under our unsustainable exercise of discretion standard. State v. Spaulding, 172 N.H. 205, 207 (2019). In determining whether the trial court unsustainably exercised its discretion, we

consider whether the record establishes an objective basis sufficient to sustain the court's discretionary judgment. Id. at 207-08. To satisfy this standard, the defendant must establish that the court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. at 208.

As an initial matter, the State contends that the defendant failed to preserve this argument, in part because he "did not contest, or even ask the court to review, its dangerousness determination" at the third bail hearing. See State v. Batista-Salva, 171 N.H. 818, 822 (2019) (observing that we generally do not consider issues raised on appeal that were not raised before the trial court). Nonetheless, even if the defendant's challenge to the trial court's dangerousness determination is preserved for our review, we conclude that the defendant's argument fails on its merits.

The trial court's findings of dangerousness are supported by the officer's testimony at the first bail hearing regarding the incident giving rise to the defendant's charges. The officer testified that the defendant, among other things, threatened to commit assault, displayed a knife in a threatening manner, acted combatively towards the police, and attempted to overdose while in police custody. Cf. Spaulding, 172 N.H. at 208 (upholding an order of preventive detention, pursuant to an earlier version of RSA 597:2, based, in part, upon the defendant's use of alcohol, threats to kill the victim, threats to commit suicide, possession of a knife, and combativeness with the police). Although the defendant is entitled to a presumption of innocence until proven guilty, the trial court concluded that there was probable cause to believe that the defendant committed the charged offenses. See State v. Castine, 172 N.H. 562, 568 (2019) (explaining that probable cause exists when there is "sufficient, trustworthy information to warrant a reasonable person to believe that the defendant committed a crime" (quotation and brackets omitted)). Moreover, although, as the defendant asserts, there is no allegation that "he struck or otherwise injured any person," the nature of the defendant's behavior is sufficiently serious to support a finding that he poses a danger to himself and the public.

The trial court's preventive detention order is further supported by the defendant's lengthy criminal record as outlined above. Although, as the defendant notes, he has not been convicted of any offense since 2013, he represented to the trial court that he was incarcerated for nearly ten years as a result of his 2011 manslaughter conviction. Given that the defendant was incarcerated for much of the last decade, the fact that he led an apparently law-abiding life while in a restrictive environment does little to undermine the trial court's findings that he would pose a danger to himself and others if released. Even crediting him with a decade of law-abiding behavior, his criminal record reflects a longstanding pattern of violent and self-destructive behavior that supports a finding of dangerousness.

4

The defendant, nonetheless, asserts that he poses a danger to himself and others "only when, and to the extent that, his mental illnesses and substance-abuse issues are untreated." He argues that, with the appropriate level of treatment and supervision from the judicial system and his half-brother, a retired Marine who has offered to support the defendant upon his release, "there is every reason to conclude that he could be safely managed" in the community. However, the record demonstrates that, at the time of his arrest, the defendant was already receiving regular mental health treatment and residing at a sober living facility. The defendant points to no evidence in the record demonstrating that more treatment and greater supervision would sufficiently mitigate his dangerousness. We therefore conclude that the trial court did not unsustainably exercise its discretion when it found by clear and convincing evidence that preventive detention without bail was warranted in this case. See Spaulding, 172 N.H. at 209.

The defendant next argues that the trial court erred by concluding that his continued preventive detention does not violate his due process rights. To the extent that the defendant raises this argument under the State Constitution, we conclude that he failed to preserve it for our review. The defendant made no specific argument to the trial court that his continued preventive detention violates his rights under the State Constitution, and he failed to invoke any specific provision of the State Constitution in his appellate memorandum. See State v. Oakes, 161 N.H. 270, 285 (2010) (explaining that, in order to preserve a state constitutional claim, the defendant must "raise it in the trial court" and "specifically invoke a provision of the State Constitution in his brief"). Moreover, in reaching its decision, the trial court limited its analysis to federal constitutional law. See State v. Perez, 173 N.H. 251, 258 (2020) ("[T]he purpose of our preservation rule is to ensure that trial courts have an opportunity to rule on issues and to correct errors before parties seek appellate review."). Accordingly, in resolving the defendant's appeal, we need only consider whether his continued preventive detention violates his due process rights under the Federal Constitution.

Although we ordinarily review decisions regarding bail for an unsustainable exercise of discretion, Spaulding, 172 N.H. at 207, the issue of whether the trial court correctly concluded that the defendant's continued preventive detention does not violate his federal due process rights raises a question of constitutional law, which we review de novo, see State v. MacElman, 154 N.H. 304, 307 (2006) (explaining that we review questions of constitutional law de novo); cf. State v. Willey, 163 N.H. 532, 541 (2012) ("[W]here, as here, the defendant asserts that his constitutional rights have been violated as a result of the trial court's sentencing decision, we review that decision de novo."). However, we will not disturb the trial court's factual findings relating to this issue unless they are unsupported by the record or erroneous as a matter of law. See State v. Labrie, 172 N.H. 223, 237 (2019);

5

see also United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993) ("[W]e review the district court's findings of historical fact in this case for clear error, but we review its ultimate resolution of the constitutional due process issue de novo.").

The Due Process Clause of the Federal Constitution protects an individual's substantive due process right to be free from government action that "shocks the conscience or interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987) (quotations and citation omitted); see U.S. CONST. amends. V, XIV. Pretrial detention satisfies substantive due process only when "its purpose is regulatory rather than punitive." Briggs, 697 F.3d at 101 (explaining that permissible regulatory purposes include "preventing danger to the community" and "ensuring a defendant's presence at trial" (quotations and brackets omitted)). Even with a valid regulatory purpose, however, pretrial detention may become punitive if it is excessively prolonged. See Millan, 4 F.3d at 1043. "[W]hen detention becomes 'excessively prolonged,' it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs." Id.; see Salerno, 481 U.S. at 747 (explaining that the distinction between punitive and regulatory pretrial detention depends, in part, upon "whether [the detention] appears excessive in relation to the alternative purpose assigned to it" (quotation and brackets omitted)).

Because "due process places no bright-line limit on the length of pretrial detention," determining whether pretrial detention has become excessively prolonged "requires assessment on a case-by-case basis." Briggs, 697 F.3d at 101. In United States v. Zannino, 798 F.2d at 547-49, the First Circuit weighed the following six factors in deciding whether the defendant's continued pretrial detention violated his federal due process rights: (1) "the seriousness of the charges"; (2) "the strength of the government's proof that defendant poses a risk of flight or a danger to the community"; (3) "the strength of the government's case on the merits"; (4) "the length of the detention that has in fact occurred"; (5) "the complexity of the case"; and (6) "whether the strategy of one side or the other has added needlessly to that complexity." Id. at 547 (quotations omitted). Other federal circuit courts have applied similar analytical frameworks in evaluating such claims. See, e.g., Briggs, 697 F.3d at 101 (explaining that, when determining whether a defendant's pretrial detention has become excessively prolonged, the court "consider[s] the strength of the evidence justifying detention, the government's responsibility for the delay in proceeding to trial, and the length of the detention itself").

Here, in denying the defendant's federal due process claim, the trial court applied the six above-referenced factors as set forth by the First Circuit in Zannino. Because neither the defendant nor the State argues to the contrary, we assume, for the purposes of this appeal, that the trial court applied the appropriate analytical framework in reaching its decision. With this framework in mind, we conclude that the defendant's continued preventive

detention does not violate his rights under the Due Process Clause of the Federal Constitution, and, thus, the trial court's decision was not erroneous.

For the same reasons that we affirm the trial court's findings of dangerousness under RSA 597:2, III(a), we agree with the trial court that the first and second Zannino factors — the seriousness of the charges and the strength of the State's proof that the defendant poses a danger to the community — weigh against his due process claim. As the trial court noted, the defendant's charges include, among other things, four Class B felonies, which, collectively, expose him to the possibility of fourteen to twenty-eight years in state prison. These charges are not, as the defendant suggests, limited to property offenses: they stem from, among other things, allegations of drug possession, threatening behavior involving a knife, and combativeness towards the police. Cf. Spaulding, 172 N.H. at 208-09. The officer's testimony about the nature of these allegations, coupled with the defendant's lengthy criminal history, demonstrates that the State's proof of dangerousness was strong. Cf. Sharps v. United States, 246 A.3d 1141, 1158-59 (D.C. 2021) (concluding that the strength of the evidence of the defendant's dangerousness weighed against his federal due process claim, in part due to his "many prior criminal convictions for burglary, assault, robbery, and firearms offenses"). That the defendant had an outstanding warrant in Massachusetts for a parole violation at the time of his arrest further demonstrates the strength of the State's proof of dangerousness. See Millan, 4 F.3d at 1047-48 (noting the fact that "much of the ongoing criminal activity charged in the indictment occurred during [the defendant's] five years of probation following his homicide conviction" as relevant to the strength of the evidence regarding the defendant's dangerousness).

Moreover, we disagree with the defendant's contention that his dangerousness is wholly attributable to the lack of adequate treatment for his mental illnesses and substance use disorder. As noted above, the defendant was receiving regular treatment and was residing at a sober living facility at the time of the incident giving rise to this case. The defendant has cited no evidence in the record that, had he been receiving a greater level of treatment at that time, the incident would not have occurred. The record also demonstrates that the defendant experienced gaps in his treatment during his incarceration and that those gaps were largely attributable to his own actions, thereby demonstrating that the defendant would likely have trouble complying with his treatment plan while living in a less restrictive environment.

We also agree with the trial court that the third factor — the strength of the State's case on the merits — weighs against the defendant's due process claim. The strength of the State's case is bolstered by, among other things, the officer's testimony regarding the defendant's conduct on the morning of the

7

incident.  The defendant concedes that, with respect to the charges involving his conduct while he was in police custody, "the State may have a strong case." The defendant argues, however, that the State's case "stands on less sure footing" with respect to the offenses that allegedly occurred at the sober living facility.  Specifically, the defendant asserts that the State's case "depend[s] entirely on the credibility" of H.S. and P.S, both of whom face their own criminal charges.  The defendant also points to an inconsistency between their statements regarding whether the defendant threatened to "hit" or "stab" them.

We are unpersuaded by this argument.  Aside from the factual discrepancy identified by the defendant, H.S.'s and P.S.'s statements to the police were consistent in all other respects.  Moreover, their statements are corroborated by the information provided by the employee who attempted to deescalate the situation before calling the police.  The State's case is also supported by the potential testimony of the officers who responded to the sober living facility and who witnessed the defendant reach for his knife and resist arrest.  The defendant may attempt to impeach H.S. and P.S. at trial, but, ultimately, the trier of fact is in the best position to judge the credibility of the witnesses in this case.  See Bouffard v. State Farm Fire & Cas. Co., 162 N.H. 305, 312 (2011).  Accordingly, the State's case on the merits appears strong.

With respect to the fourth factor — the length of the detention — the State does not dispute that "the defendant has been detained for a considerable length of time."  Indeed, the defendant has been in custody since his arrest in June 2020, and, as of March 2021, when the trial court issued its order, no trial had been scheduled in this case.  Moreover, the record provides no indication that a trial is likely to occur in the near future.  We therefore conclude that the length of the defendant's detention weighs in his favor, particularly in light of the highly restrictive conditions of his confinement, his preexisting mental health and substance use issues, and, as explained below, the fact that neither party has contributed to the delay in this case.  See United States v. Gonzales Claudio, 806 F.2d 334, 341 (2d Cir. 1986) ("Detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process.").  We observe, however, that "the length of detention alone is not dispositive and will rarely by itself offend due process."  United States v. El-Hage, 213 F.3d 74, 79 (2d Cir. 2000) (quotation omitted).

With respect to the fifth Zannino factor — the complexity of the case — neither party disputes that this case is not particularly complex.  The defendant argues, however, that the trial court erred by weighing this factor against his due process claim.  According to the defendant, "[o]nce the period of pre-trial incarceration is . . . long enough to weigh in favor of release, it cannot be true that the anticipated simplicity of the long-delayed trial favors pre-trial incarceration."  We need not address this argument because, even assuming

that the trial court should have weighed this factor in the defendant's favor, we conclude that the balance of all six Zannino factors ultimately weighs against the defendant's due process claim.

Thus, we turn to the remaining Zannino factor — whether either party has needlessly added to the complexity of the case or the delay in the proceedings. With respect to this factor, the defendant concedes that neither party is responsible for the delay in this case, which resulted from the COVID-19 pandemic. He argues, however, that the trial court erred by weighing this factor against his release because "[o]ne could just as well say that [his] lack of responsibility for the delay weighs in favor of his release." According to the defendant, "[t]he fact that he is not at fault for the pre-trial delay should weigh in his favor." We disagree.

The Seventh Circuit Court of Appeals has held that "[i]f judge and prosecutor are doing all they reasonably can be expected to do to move the case along, and the statutory criteria for pretrial detention are satisfied, then we do not think a defendant should be allowed to maintain a constitutional challenge to that detention." United States v. Infelise, 934 F.2d 103, 104 (7th Cir. 1991). Accordingly, the defendant "must show that either the prosecution or the court has unnecessarily delayed in bringing the case to trial." Id. at 104-05. Therefore, because the defendant makes no argument that the State caused the delay in this case, we conclude that the trial court did not err by failing to weigh this factor in the defendant's favor. See id.; Zannino, 798 F.2d at 549 (finding no due process violation, in part because "the government ha[d] done all it could to bring [the defendant] to trial expeditiously"); see also United States v. Hill, 462 F. App'x 125, 127 (2d Cir. 2012) (finding no due process violation, in part because "the record reflects no intentional, unwarranted delay by the prosecution, and most of the delay is attributable to the continuances requested by [the defendant's] twenty co-defendants and the complexities inherent in a twenty-defendant case"). At best, the trial court could have weighed this factor neutrally in neither party's favor, given its finding that the defendant has "not contributed to the delay in any manner." See United States v. Gatto, 750 F. Supp. 664, 675 (D.N.J. 1990) ("As neither side has needlessly added to the complexity of this case, this factor neither weighs for or against defendants' release at this time."). Nonetheless, even if this factor is neutral, the balance of all six Zannino factors weighs against the defendant's due process claim.

In sum, the first three Zannino factors — the seriousness of the charges, the strength of the State's proof of dangerousness, and the strength of the State's case on the merits — all weigh in favor of preventive detention. The fourth factor — the length of detention — weighs in the defendant's favor, and we assume that the fifth factor — the complexity of the case — also weighs in his favor. With respect to the sixth factor — whether either party needlessly

9

contributed to the complexity or delay — we conclude that the trial court did not err by failing to weigh this factor in the defendant's favor; at best, this factor is neutral.  Therefore, we conclude that the balance of all six factors supports the trial court's decision.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**