NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Coos
No. 2021-0168

THE STATE OF NEW HAMPSHIRE

v.

VOLODYMYR ZHUKOVSKYY

Argued: June 29, 2021
Opinion Issued: September 16, 2021

John M. Formella, attorney general (Scott D. Chase, assistant attorney general, on the memorandum of law and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the memorandum of law and orally, for the defendant.

BASSETT, J. The defendant, Volodymyr Zhukovskyy, appeals an order of the Superior Court (Bornstein, J.) denying his third motion for an evidentiary bail hearing. See RSA 597:2 (Supp. 2020). Because we conclude that RSA 597:2, III-IV does not require the trial court to hold an evidentiary hearing when the parties dispute facts relevant to dangerousness, and that the trial court sustainably exercised its discretion when it denied the defendant's motion, we affirm.

The following facts are established by the record or are undisputed. On June 21, 2019, the defendant was operating a Dodge Ram 2500 truck with an attached trailer when he collided with a group of motorcyclists, killing seven

people and seriously injuring another. The defendant was arrested and initially charged with seven counts of negligent homicide. At a hearing on June 25, the defendant waived arraignment and a bail hearing, and the parties agreed that he be placed in preventive detention due to the danger he posed to himself and the public. See RSA 597:2, III(a). The trial court explained in its bail order that, if released, the defendant would likely present a danger to his safety or that of the public because his "criminal and driving history exhibit a pattern of operating a motor vehicle in a dangerous manner." In October 2019, a grand jury indicted the defendant on the following charges arising from the collision: seven counts each of manslaughter, RSA 630:2, I(b) (2016), negligent homicide, RSA 630:3, I (2016), and negligent homicide — driving while under the influence of a controlled drug (DUI), RSA 630:3, II (2016); one count of aggravated DUI, RSA 265-A:3, I(b) (2014); and one class B felony count of reckless conduct, RSA 631:3, I-II (2016).

In March 2020, based on new evidence that the State had provided in discovery, the defendant filed a motion for an evidentiary bail hearing, arguing that the court should hold an evidentiary hearing on the continuing need for preventive detention. The trial court denied the defendant's motion for the reasons set forth in a portion of the State's objection and denied the defendant's motion to reconsider that ruling. The defendant filed a second motion for an evidentiary bail hearing in September 2020, which raised similar arguments. The court again denied the motion, referencing the reasoning in part of the State's objection.

In April 2021, the defendant filed a third motion for an evidentiary bail hearing, which is the subject of this appeal.[1] He argued primarily that the justifications for continued preventive detention were undermined by the passage of time, occasioned by delays in scheduling trial, as well as updates to the State's crash report and other discovery, which, the defendant contended, weakened the State's case against him. He requested that the trial court hold an evidentiary hearing at which he could present the relevant, newly available evidence, and that the court reassess its dangerousness finding. The trial court denied the motion, citing the reasons set forth in specific paragraphs of the State's objection. The court relied, in part, upon the State's reasoning that, "the facts surrounding the crash on June 21, 2019, the fact that the defendant was on bail, the defendant's unyielding drug use, and his prior related criminal history," justified the defendant's continued preventive detention due to his dangerousness. This appeal followed.

---

[1] In March 2021, a month prior to the filing of this motion, the State reindicted the defendant on the manslaughter, negligent homicide, negligent homicide — DUI, and reckless conduct charges, and the trial court issued a new bail order continuing the defendant's preventive detention due to his dangerousness.

The sole issue on appeal is whether the trial court erred when it denied the defendant's third request for an evidentiary bail hearing. The defendant argues that, because RSA 597:2, III-IV creates an implied right to an evidentiary hearing when, as here, the parties dispute facts relevant to the dangerousness finding, the trial court erred as a matter of law when it denied his third motion for an evidentiary bail hearing. The State counters that the statute does not expressly or impliedly grant a defendant the right to an evidentiary bail hearing, and, therefore, we should review the trial court's decision under our unsustainable exercise of discretion standard and find its decision sustainable. For the reasons that follow, we agree with the State.

Resolving the issue of whether RSA 597:2, III-IV requires the trial court to hold an evidentiary bail hearing raises an issue of statutory interpretation. Accordingly, our review is de novo. See State v. Tsopas, 166 N.H. 528, 529-30 (2014). We are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. Id. at 530. When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Petition of Carrier, 165 N.H. 719, 721 (2013).

RSA 597:2 authorizes the trial court to release or detain a defendant pending trial. When considering whether to release or detain a defendant pending trial, the trial court must consider, among other things, the safety of the public and the defendant upon his or her release. RSA 597:2, III(a). Under the statute, the court may order that a defendant be held in preventive detention without bail on the basis of dangerousness "only if the court determines by clear and convincing evidence that release will endanger the safety of [the defendant] or the public." Id. When evaluating the dangerousness of a defendant, "the court may consider all relevant factors presented pursuant to paragraph IV." Id. Paragraph IV, in turn, governs the process by which the trial court may receive evidence in support of, or opposition to, preventive detention. See RSA 597:2, IV. Construed together, paragraphs III and IV provide that, in making its dangerousness determination, the trial court may consider evidence of all relevant factors presented to it through the procedures set forth in paragraph IV. See RSA 597:2, III-IV.

Paragraph IV provides, in relevant part:

> (a) Evidence in support of preventive detention shall be made by offer of proof at the initial appearance before the court. At that time, the defendant may request a subsequent bail hearing where live testimony is presented to the court.
> (b) At any subsequent hearing, such testimony may be presented via video conferencing, unless the court determines that

3

witness testimony in court is necessary. A request by the
defendant for in-court testimony shall be made by oral motion at
the initial hearing or by written motion prior to any subsequent
hearing. Any order granting the defendant's request shall be
distributed to the parties at least 48 hours prior to any subsequent
hearing.

RSA 597:2, IV(a)-(b). This statutory language establishes offers of proof as the
mandatory method by which the State must present evidence in support of
preventive detention at the defendant's initial appearance before the court.
RSA 597:2, IV(a); see Appeal of Rowan, 142 N.H. 67, 71 (1997) ("It is the
general rule that in statutes . . . the word 'shall' is mandatory." (quotation
omitted)). The statute then outlines how and when the defendant "may
request" an evidentiary bail hearing: either by oral motion at the initial
appearance or by written motion at any other time. See RSA 597:2, IV(a)-(b).
Although the statute contemplates the defendant's ability to request an
evidentiary hearing, the statutory language does not require the trial court to
grant that request when the parties dispute facts relevant to dangerousness.
Indeed, the statute neither states that a defendant is entitled to an evidentiary
hearing when there are disputed issues of material fact related to
dangerousness, nor specifies when a trial court must grant a defendant's
request for a hearing. See id. Consequently, to adopt the defendant's
construction of the statute, we would have to add language to the statute that
the legislature did not include, which we will not do. See Petition of Carrier,
165 N.H. at 721 (stating that we "will not . . . add language that the legislature
did not see fit to include").

In addition, we are not persuaded by the defendant's assertion at oral
argument that the fact that paragraph II of RSA 597:2 entitles a person
charged with a probation violation to a bail hearing establishes that the
legislature intended that individuals who are charged with an offense are also
entitled to a bail hearing under paragraphs III and IV. RSA 597:2, II provides
that, subject to certain exceptions, "a person charged with a probation violation
shall be entitled to a bail hearing." RSA 597:2, II. Contrary to the defendant's
contention, this language demonstrates that, when the legislature intends to
grant a right to a hearing, it knows how to do so. See id.; cf. RSA 597:6-e, II
(Supp. 2020) (providing that, when reviewing a circuit court's determination
that a person be detained based upon dangerousness, "the superior court shall
. . . conduct a hearing and make written findings"); RSA 461-A:12, IV (Supp.
2020) (providing that "[a]t the request of either parent, the court shall hold a
hearing" on the relocation of a child's residence and describing the timing for
that "evidentiary hearing"). Thus, we conclude that RSA 597:2, III-IV does not
create a statutory entitlement to an evidentiary bail hearing when the parties
dispute issues of fact material to dangerousness.

4

In the absence of a statutory mandate that the trial court hold an evidentiary hearing, the court has discretion to determine whether a hearing is necessary.  Tsopas, 166 N.H. at 530; see State v. McGurk, 163 N.H. 584, 587 (2012); cf. Super. Ct. R. 13(b).  We review a court's determination not to hold a hearing under our unsustainable exercise of discretion standard.  Tsopas, 166 N.H. at 530.  When determining whether a trial court ruling is an unsustainable exercise of discretion, we consider "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made."  State v. Lambert, 147 N.H. 295, 296 (2001).  To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case.  Id.

Although, as addressed above, we have rejected the defendant's challenge to this standard of review, he argues that, if we apply it, we should conclude that the trial court's denial of his third request for an evidentiary hearing was not a sustainable exercise of discretion.  He argues that, as a matter of statutory interpretation, the following three "factors" are relevant to the court's dangerousness finding and therefore should have been considered by the trial court: the defendant's "character and . . . the risk of danger he pose[s]"; the strength of the State's case on the merits of the charges against the defendant; and whether there are less restrictive alternatives to detention without bail.  He further contends that, because the parties disputed numerous facts germane to these three factors — including who caused the initial impact and whether the defendant was impaired at the time — the trial court erred when it declined to hold an evidentiary hearing to resolve those material factual disputes.  The State counters that the trial court's decision was sustainable based on the undisputed facts relating to the defendant's history of substance use, his prior convictions, the fact that he had been released on bail for a pending DUI charge at the time of the collision, and the nature of the charged offenses.  We agree with the State.

As an initial matter, the defendant draws our attention to State v. Spaulding, 172 N.H. 205, 209 (2019), where we observed that an earlier, but substantially similar, version of RSA 597:2 did not "require the trial court to consider less restrictive alternatives to detention without bail before ordering such detention."  The defendant argues that this statement in Spaulding is contrary to the substantive due process guarantees of the Federal and State Constitutions because it does not require that the trial court, before ordering detention, "find by clear and convincing evidence that no conditions of release can reasonably assure the safety of the defendant and the community."  The defendant relies on United States v. Salerno, 481 U.S. 739 (1987) and State v. Furgal, 161 N.H. 206 (2010), in support of this argument.  We are not persuaded.

5

Salerno involved a facial challenge to the federal Bail Reform Act on the basis that it violated, among other things, the Due Process Clause of the Federal Constitution. Salerno, 481 U.S. at 745-46. That statute required the trial court, before ordering detention, to find "by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." Id. at 750. The Supreme Court upheld the statute against the defendant's facial substantive due process challenge, concluding that the government's legitimate interest in community safety, combined with the procedural safeguards provided in the statute, outweighed the liberty interest at stake. Id. at 747-52.

The defendant here essentially asserts that Salerno established a minimum constitutional threshold for all bail statutes, which requires that all trial courts, before ordering detention, find by clear and convincing evidence that no conditions of release can reasonably assure the safety of the defendant and the community. However, in Furgal, we rejected the argument that Salerno set a minimum threshold for all bail inquiries, observing that in Salerno the Court "was confronted with one specific bail scheme and decided only the narrow issue of whether that particular scheme could survive constitutional scrutiny." Furgal, 161 N.H. at 214. In Furgal, we held only that RSA 597:1-c (Supp. 2009), which prohibits bail in certain cases, withstood a facial substantive due process challenge under the State and Federal Constitutions. Id. at 210-15, 218. Thus, contrary to the defendant's contention, neither Salerno nor Furgal stands for the proposition that, in order to be constitutional under the substantive due process guarantees of the Federal and State Constitutions, a bail statute like RSA 597:2 must require that trial courts, before ordering detention, find by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community and the defendant. See Salerno, 481 U.S. at 752; Furgal, 161 N.H. at 214.

Nonetheless, for the purposes of this appeal, we will assume, without deciding, in the defendant's favor that: (1) the first two factors the defendant identifies — the defendant's character and the danger he poses, and the strength of the merits of the State's case — are relevant to the court's dangerousness determination; (2) with respect to the third factor, the court was required to find by clear and convincing evidence, before ordering detention, that no conditions of release could reasonably assure the safety of the defendant and the community; and (3) the factual disputes the defendant identifies in his memorandum are material to each of those three factors. Even making these assumptions in the defendant's favor, we conclude that the undisputed facts presented to the trial court provide an objective basis sufficient to sustain the trial court's judgment.

As to the defendant's "character and . . . the risk of danger he pose[s]," the defendant highlights disputed facts about whether he was impaired at the

6

time of the collision and whether he crossed into oncoming traffic. However, the grand jury indicted the defendant on the charged offenses. Accordingly, it is conclusively established that there is at least probable cause to believe, as alleged in the indictments, that the defendant, while under the influence of a controlled drug, caused a collision that led to the death of seven individuals, the serious bodily injury of an eighth person, and the endangerment of numerous others. See State v. Castine, 172 N.H. 562, 568 (2019) ("A grand jury's decision to indict conclusively determines the existence of probable cause to believe that the defendant committed the crime with which it charged him." (quotation omitted)); id. (explaining that "[p]robable cause" means that there is "sufficient, trustworthy information to warrant a reasonable person to believe that the defendant committed a crime" (quotation and brackets omitted)).

The charged offenses are especially indicative of the defendant's character and the risk of danger he poses given that this is not the first time the defendant has been charged with driving while under the influence. In 2014, the defendant pleaded to sufficient facts to support a conviction for the offense of operating a vehicle while under the influence of alcohol in Massachusetts. The conduct underlying that offense involved the defendant operating a vehicle while under the influence of alcohol at almost twice the legal limit, running a stop sign, striking a parked vehicle on the opposite side of the street, and then fleeing the scene. Notably, approximately one month prior to the charged incident, the defendant is alleged to have engaged in similar conduct in Connecticut that resulted in a charge that he was driving while under the influence of drugs. At the time of the June 21 collision, the defendant had been released on bail for the Connecticut offense.

Also telling of his character and the risk of danger he poses if released is the defendant's acknowledgement in the trial court that it is "not a secret" that he has a "history of substance abuse." That history includes misdemeanor convictions in 2018 and 2019 for possession of a controlled substance and possession of drug paraphernalia. The defendant's substance use issues did not cease prior to the charged offenses, as evidenced by the fact that he had been charged one month earlier in Connecticut with driving while under the influence of a controlled substance, and is alleged to have been under the influence of drugs at the time of the collision.

We are not convinced by the defendant's argument that the fact that he has been sober while in pretrial detention raises "an important doubt" about whether he is currently dangerous. Although commendable, his sobriety while detained in a restrictive environment does not negate the undisputed fact that he allegedly committed the June 21, 2019 offenses while driving under the influence of drugs in violation of release conditions following his May 2019 arrest for driving while under the influence of drugs. Thus, the undisputed

facts establish a pattern of reckless behavior involving the defendant's operation of motor vehicles while impaired to the detriment of the safety of the public.

These undisputed facts also provide an objective basis for the trial court's decision regarding the second factor identified by the defendant — the strength of the merits of the State's case. As explained above, the grand jury's indictment of the defendant establishes that there is at least probable cause supporting the State's case. See Castine, 172 N.H. at 568. The State's updated crash reports, which the defendant relied upon to support his third motion for a bail hearing, do not undermine that fact. Because the grand jury reindicted the defendant on all but one of the pending charges after the release of the updated reports, probable cause continues to support the allegations despite the updated discovery.

Similarly, the above undisputed facts also provide a sufficient basis for a finding by the trial court as to the third factor identified by the defendant: that there were no conditions that could reasonably assure the safety of the defendant and the community. Even if we assume that, at an evidentiary hearing, the defendant would have presented evidence that he was not impaired or driving dangerously at the time of the collision, that evidence would not have altered two undisputed facts: first, there is, at a minimum, probable cause to believe that the defendant committed the charged offenses; and, second, at the time of the collision, he had been released on bail for a similar offense. Put differently, it was reasonable for the court to conclude, based solely on the undisputed facts, that, because the defendant had failed to lead a law-abiding life free from controlled substances when on conditional release, he is unlikely to do so now.

In sum, there are sufficient undisputed facts related to each of the three factors identified by the defendant that support the trial court's decision. Considering all these undisputed facts, we conclude that they provide an objective basis sufficient to sustain the trial court's denial of the defendant's third request for an evidentiary bail hearing because they are sufficient to sustain the court's dangerousness finding. See Spaulding, 172 N.H. at 208-09 (affirming trial court's dangerousness determination and detention order, which was premised solely upon the circumstances of the alleged crime). In other words, the trial court could have reasonably determined that, given these undisputed facts, an evidentiary hearing was unnecessary because it would not have altered its dangerousness determination. Cf. State v. Korean Methodist Church of N.H., 157 N.H. 254, 257 (2008) (affirming trial court's refusal to hold evidentiary hearing when party requesting hearing failed to allege sufficient facts on which it could prevail); Beane v. Dana S. Beane & Co., 160 N.H. 708, 711-12 (2010) (affirming trial court's decision not to hold an evidentiary hearing on defendant's motion to dismiss when "the issues before the trial court were limited to legal analysis of the facts asserted by the plaintiff").

Accordingly, we conclude that the defendant has not carried his burden of showing that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case.  See Lambert, 147 N.H. at 296.

To the extent that the defendant also argues that the trial court's denial of his third request for an evidentiary bail hearing violated his procedural due process rights under the State and Federal Constitutions, we decline to address that argument.  To determine whether the defendant had a procedural due process right to an evidentiary hearing, we normally would engage in a three-factor analysis addressing: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.  Korean Methodist Church, 157 N.H. at 258.  However, because the defendant neither cites nor discusses this three-factor analysis in his memorandum, we deem this argument inadequately developed, and we decline to review it.  See id.

In sum, we conclude that RSA 597:2, III-IV does not require the trial court to hold an evidentiary bail hearing when the parties dispute facts relevant to dangerousness and that the trial court sustainably exercised its discretion when it denied the defendant's third motion for an evidentiary bail hearing.

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

9