# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0035, <u>State of New Hampshire v. Kevin Porter</u>, the court on June 22, 2022, issued the following order:**

Having considered the memoranda of law and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, Kevin Porter, appeals orders of the Superior Court (<u>Messer</u> and <u>Nicolosi</u>, JJ.) denying his request for release pending trial on his personal recognizance and on certain conditions, and ordering his preventive detention. <u>See</u> RSA 597:2, I, III(a) (Supp. 2021); RSA 597:6-e, III (Supp. 2021). On appeal, he argues that the trial court erred by determining that his release will endanger the safety of the public. <u>See</u> RSA 597:2, III(a). We affirm.

The trial court may order preventive detention pending trial if it determines, by clear and convincing evidence, that the defendant's release will endanger the safety of the public. <u>Id</u>. We will not overturn the trial court's decision absent an unsustainable exercise of discretion. <u>State v. Spaulding</u>, 172 N.H. 205, 207 (2019). In determining whether the trial court unsustainably exercised its discretion, we review the record to determine whether it establishes an objective basis sufficient to sustain the trial court's discretionary judgment. <u>Id</u>. at 207-08. To satisfy this standard, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. <u>Id</u>. at 208.

The defendant has an extensive criminal record that includes a number of convictions for engaging in assaults, including assaults with dangerous weapons, and a number of convictions for possessing weapons. Additionally, the defendant has had at least five restraining orders, including one restraining order issued for life, entered against him. In 2011, the defendant was convicted in Massachusetts on charges of manslaughter and assault and battery with a dangerous weapon, and was sentenced to a stand-committed incarceration term of nine to twelve years.

The defendant was released from incarceration in August 2019, and in June 2020, following an incident in Nashua, he was charged with engaging in a number of crimes, including criminal threatening with a deadly weapon and felony possession of a dangerous weapon (Nashua case). The Superior Court (<u>Temple</u>, J.) ordered the defendant's preventive detention in the Nashua case, finding that he posed a danger to himself and the public, and following an appeal of that order, we affirmed. <u>See</u> <u>State v. Porter</u>, No. 2021-0088, 2021 WL 3930281 (N.H. Sept. 2, 2021). In upholding the trial court's determination of

dangerousness, we reasoned that an officer had testified to the facts underlying the criminal charges, which included the defendant's displaying of a knife and threat to assault others with it, and that the trial court had found probable cause for the charged crimes. Id. at *3. We further reasoned that the defendant's lengthy criminal record "reflect[ed] a longstanding pattern of violent and self-destructive behavior," and thus, supported the dangerousness finding. Id. Although we acknowledged that the defendant had not been convicted of a crime in several years, we observed that "[g]iven . . . [his] incarcerat[ion] for much of the last decade, the fact that he led an apparently law-abiding life while in a restrictive environment [did] little to undermine" the dangerousness finding. Id.

The present case arose from an incident occurring during the defendant's preventive detention in the Nashua case. At the defendant's arraignment in this case, the State requested preventive detention, representing that, in June 2021, while he was conversing with another inmate at the Hillsborough County House of Corrections, the defendant suddenly stood, struck the other inmate in the head with a closed fist, and after the other inmate fell onto his back, stood over him and repeatedly struck him in the face with a closed fist. In response, the defendant represented that the other inmate had spit in his face during a verbal disagreement, and that this action by the other inmate had provoked the attack. The Trial Court (Messer, J.) ordered preventive detention and denied the defendant's request for a hearing on oral testimony, see RSA 597:2, IV(a), noting that the defendant, who had not yet viewed surveillance video of the incident, was free to request an evidentiary hearing after viewing the video.

Thereafter, the defendant moved for an evidentiary hearing on bail, see RSA 597:2, IV(b), asserting that the alleged victim had provided an affidavit stating that he had in fact threatened the defendant, and that the incident was one of "mutual combat." The Trial Court (Nicolosi, J.) granted the defendant's motion for a hearing, and at the hearing, the parties agreed to proceed upon submission of the alleged victim's affidavit, testimony of the justice of the peace before whom the alleged victim had executed the affidavit, and submission of the surveillance video. In the affidavit, the alleged victim asserted that, prior to the incident, he had been pestering the defendant to assist him on a legal matter, and when the defendant refused, the alleged victim called the defendant a racial slur and threatened to punch him in the face. The alleged victim claimed that he had thus provoked the attack, that the incident constituted "mutual combat as a result of my threatening to physically harm" the defendant, that the parties had since "apologized . . . and . . . put this incident behind us," and that he would not, "under any circumstances[,] cooperate with this prosecution."

In continuing the preventive detention, the Trial Court (Nicolosi, J.) observed that the surveillance video was "more consistent with an assault than mutual combat." The trial court characterized the video as depicting a "brutal

2

attack," noting that the alleged victim was smaller and older than the defendant, that the alleged victim had made no movements toward the defendant prior to the attack, and that the alleged victim had "curl[ed] up to avoid the defendant's punches and [had] throw[n] no punches of his own." The trial court additionally observed that the defendant's criminal record was "replete with convictions for serious crimes that present risk to the public." Finally, in responding to the defendant's argument that the State had offered no testimony identifying the parties in the video, the trial court observed that the alleged victim identified the defendant in his affidavit, that the court had viewed both the video and the parties in court, and that its observations of the video and the parties were consistent.

On appeal, the defendant argues that the evidence was not sufficient to support the determination of dangerousness. Specifically, he contends that the trial court gave undue weight to his criminal record because his most recent conviction was almost ten years old. He further contends that the trial court erred by relying upon the circumstances of the charged crime because there was no evidence that the alleged victim suffered injuries, and because the alleged victim's affidavit established that he had been pestering the defendant, and that his use of a racial slur had provoked the incident. To the extent that the trial court gave weight to the Nashua case, the defendant asserts that it erred because the State presented no evidence describing his conduct in that case, and because a separate preventive detention order exists in that case. Finally, the defendant argues that, because the environment of a jail differs from that of the outside community, "the fact that the charged assault . . . happened in jail tends to diminish its relevance as a predictor of [the defendant's] behavior in the community." We disagree.

As we reasoned in the Nashua case, "[g]iven that the defendant was incarcerated for much of the last decade, the fact that he led an apparently law-abiding life while in a restrictive environment does little to undermine the trial court's finding[]" of dangerousness. Porter, 2021 WL 3930281, at *3. Indeed, regardless of whether the State introduced evidence concerning the defendant's specific conduct in the Nashua case, there was evidence before the trial court that the defendant had been charged, less than a year after his release from incarceration on a manslaughter conviction, with serious violent crimes in the Nashua case. Cf. State v. Zhukovskyy, 174 N.H. 430, 437-38 (2021) (observing that defendant's indictment established probable cause to believe he engaged in the charged conduct relevant to dangerousness).

Moreover, regardless of whether the alleged victim suffered injuries, the trial court had before it surveillance video of the defendant engaging in what it accurately described as a "brutal attack," one that was inconsistent with the alleged victim's characterization of "mutual combat," while he was already being preventively detained for the public's protection in the Nashua case. Thus, the trial court had before it evidence that the defendant likely engaged in

3

two recent violent crimes – one within the environment of the jail and one within the outside community – that were consistent with his "longstanding pattern of violent and self-destructive behavior" reflected in his "lengthy criminal record." Porter, 2021 WL 3930281, at *3. Under these circumstances, the trial court's determination, by clear and convincing evidence, that the defendant's release would endanger the safety of the public was neither clearly untenable nor unreasonable to the prejudice of his case. RSA 597:2, III(a); see Spaulding, 172 N.H. at 208.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**